**Steven T. Wax**
**Assistant Federal Public Defender**
**steve_wax@fd.org**
**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
**steve_sady@fd.org**
**Patrick J. Ehlers**
**Assistant Federal Public Defender**
**patrick_ehlers@fd.org**
**101 S.W. Main Street, Suite 1700**
**Portland, Oregon 97204**
**503-326-2123 Telephone**
**503-326-5524 Facsimile**

**Attorneys for Petitioner**

## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDULRAHIM ABDUL RAZAK AL GINCO,**<br><br>Petitioner,<br><br>v.<br><br>**GEORGE W. BUSH, et al.,**<br><br>Respondents. | **CV 05-1310-RJL**<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH FED. R. APP. P. 23 AND FOR PRELIMINARY INJUNCTION FOR 30-DAY NOTICE OF INTENT TO TRANSFER** |

## Introduction

The Pentagon announced on April 21, 2006, that it will transfer one-third of the detainees held at Guantánamo Bay Naval Base in Cuba (Guantánamo) as soon as negotiations with the home or receiving countries are finalized.  The petitioner, Abdulrahim Abdul R. Al Ginco, may be one of the 141 men slated for imminent transfer.  This Court's

intervention is necessary because Mr. Al Ginco faces irreparable harm if the government unilaterally transfers, renders, or forcibly repatriates him. He respectfully moves the Court for an order requiring Respondents to seek advance authorization from the Court before he is transferred, rendered, or forcibly repatriated from Guantánamo.  Alternatively, he seeks a preliminary injunction requiring Respondents to provide 30-day advance notice to the Court and counsel before any such transfer, rendition, or forcible repatriation.  Mr. Al Ginco makes this request pursuant to Rule 23 of the Federal Rules of Appellate Procedure, Rule 65 of the Federal Rules of Civil Procedure, and the All Writs Act, 28 U.S.C. § 1651.

In seeking Respondents' compliance with FED. R. APP. P. 23(a)'s directive for advance court authorization, or alternatively injunctive relief for 30-day advance notice to the Court and counsel of any intent to transfer or forced repatriation, Mr. Al Ginco seeks to preserve the jurisdiction of the Federal court for the opportunity to contest the legality of his detention, status as an "enemy combatant," and the lawfulness of the transfer itself. At least two other courts have recently ordered the Respondents to provide 30-day notice of an intent to transfer or repatriate detainees, one of whom is Syrian.  *Shaaban v. Bush*, CV 05-892-CKK (May 1, 2006); *Gul v. Bush*, CV 05-888-CKK (May 1, 2006).[1]  This Court should do the same.  The Court should maintain the status quo and enjoin Respondents from transferring Mr. Al Ginco without first affording him, at a minimum, an opportunity to

---

[1]The Court in *Shaaban* amended a stay entered on May 18, 2005, to require 30-day advance notice "of any release, repatriation, or rendition that would remove Petitioner from the Court's jurisdiction." *Shaaban v. Bush*, CV 05-892-CKK (May 1, 2006).

confer with counsel.[2]

## ARGUMENT

Mr. Al Ginco is being detained by Respondents as an "enemy combatant" at Guantánamo.  Mr. Al Ginco denies being an "enemy combatant" and contends he is being detained in violation of the Constitution, treaties, and laws of the United States. Respondents have publicly stated that 119 of the 141 detainees slated for transfer will be detained by the receiving country.  Many of the countries from which the Guantánamo detainees originate have policies of detaining without charge or trial those persons whom they consider to be members of banned organizations.  The State Department's Country Report on Syria, Mr. Ginco's apparent home country, paints a dismal picture of Syria's respect for human rights of those in its custody:

> The Constitution prohibits torture, and the Penal Code provides punishment for abusers; however, there was credible evidence that security forces continued to use torture. . . .Torture was most likely to occur while detainees were being held at one of the many detention centers run by the various security services throughout the country, particularly while the authorities were attempting to extract a confession or information.

U.S. Dept. Of State, Country, Reports On Human Rights Practices -- Syria for 2004.[3]   To repatriate Mr. Al Ginco to such a country before his status as an "enemy combatant" is determined may have dire consequences.

---

[2]Counsel is in the process of making arrangements to confer with Mr. Al Ginco.  The Respondents have tentatively approved a visit for the last week of May 2006.  If, during that visit, Mr. Al Ginco informs counsel that he consents to a unilateral transfer, Counsel will inform the Court accordingly.

[3]*Available at* www.state.gov/g/drl/rls/hrrpt/2004/41732.htm.

## A.   Fed. R. App. P. 23(a) Requires Prior Court Authorization Before Respondents May Transfer Mr. Al Ginco.

Federal Rule of Appellate Procedure 23(a) unequivocally requires prior approval by a court before a habeas litigant may be transferred beyond its jurisdiction:

> **(a)   Transfer of Custody Pending Review.**  Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule.  When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as party.

Fed. R. App. P. 23(a).  The Rule's text, which is enacted under authority of the Congress, provides for no exceptions.  *See Dodd v. United States,* 125 S. Ct. 2478, 2482 (2005) ("We must presume that [the] legislature says in a statute what it means and means in a statute what it says.") (quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-54 (1992)).

In the Associated Press litigation, the Respondents opposed the release of identifying information because of  the possible danger faced by the detainees and their families by groups or individuals in their home countries. *See Associated Press v. Department of Defense*, 410 F. Supp. 2d 147, 151 n.2 (S.D.N.Y. 2006). The Respondents have a well-founded concern that detainees will suffer retaliation and possible death or serious injury based on the information contained in the CSRT transcripts, including status as enemy combatants.  For example, China is now demanding the return of detainees for persecution and prosecution as terrorists even though they were determined not to be enemy combatants.

Where the petitioner's "enemy combatant" status may have life-threatening collateral consequences – regardless of the factual basis of such allegations – resulting

in at least further detention and further interrogation, the Court should not allow the government to impair its jurisdiction unilaterally through the summary transfer of the petitioner.  Mr. Al Ginco urges the Court to order Respondents not to transfer him from Guantánamo without the prior authorization required by FED. R. APP. P. 23(a).

Mr. Al Ginco respectfully requests this Court to order Respondents to comply with Federal Rule of Appellate Procedure 23(a) requiring prior court approval before a detainee may be transferred.  While transfer of a prisoner ordinarily will not defeat the court's jurisdiction (*see Carafas v. LaValle,* 391 U.S. 234 (1968); *United States v. Giddings*, 740 F.2d 770, 772 (9th Cir. 1984)), here, a transfer to the custody of a foreign government could substantially limit Mr. Al Ginco's opportunity to contest the legality of that very transfer and his years of detention.  Jurisdiction for relief cannot be barred as "the result of interference by government officials with the presentation of the claim."  *Pace v. DiGuglielmo,* 125 S. Ct. 1807, 1818 (2005) (citation omitted). The Rule is absolute – the government must seek advance authorization to transfer Mr. Al Ginco.  Without a court order ensuring, at the very least, advance notice before Mr. Al Ginco is transferred, the continued jurisdiction of the Court could be undermined by Respondents' sudden and unilateral action.

**B.      Requiring The Limited Obligation To Provide 30-Day Advance Notice Of An Intent To Transfer Is Proper Under Federal Rule Of Civil Procedure 65.**

The Court has the inherent authority under the All Writs Act, 28 U.S.C. § 1651(a), "to issue injunctions to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973).   Mr. Al Ginco's request meets the most fundamental purpose of preliminary injunctive relief under Rule 65, "to preserve the status quo between the parties pending a final determination of the merits of the action."  13 MOORE'S FEDERAL PRACTICE 3d, § 65.20 (2004).

Mr. Al Ginco is entitled to a preliminary injunction for the limited purpose of maintaining the status quo pending adjudication of the merits of his habeas petition by requiring Respondents to provide 30-day notice of any intent to transfer or repatriate him. Mr. Al Ginco can demonstrate: (1) irreparable harm if the application is not granted; (2) a strong public interest in providing the relief he seeks; (3) a likelihood of success on the merits; and (4) no corresponding injury to Respondents if the restraint is not granted. *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001).  "These factors interrelate on a sliding scale and must be balanced against each other."  *Serano Labs., Inc. v. Shalala,* 158 F.3d 1313, 1318 (D.C. Cir. 1998).  When the balance of hardships tips decidedly toward the movant, it "will ordinarily be enough that the movant has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation."  *Washington Metro Area Transit Comm'n v. Holiday Tours,* 559 F.2d 841, 844 (D.C. Cir. 1977).  An injunction may issue if

one factor is particularly strong, even if the arguments in the other areas are weak. *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

      1.      *Transfer Without Prior Approval Or Notice Would Cause Irreparable Harm.*

Mr. Al Ginco faces three obvious and substantial threats if he is suddenly and unilaterally transferred from Guantánamo.  First, he faces the possibility of torture and indefinite detention in his home country Syria.  Second, he faces the potential elimination of all opportunity to adjudicate his habeas claims.  Third, he faces persecution based on his individual case.

Torture and indefinite detention undeniably cause irreparable harm.  Mr. Al Ginco faces a substantial likelihood of retaliation and injury if he is "renditioned" or forcibly repatriated.  The government admits that many detainees have been transferred to continued custody.  U.S. Dept. of State, Country Reports on Human Rights Practices for 2004 (65 of 211 detainees released to continued custody).[4]  In fact, the  Pentagon has announced that the majority of the detainees slated for imminent transfer will be detained for an indefinite period of time. Reuters, *Stuck In Guantanamo*, INT'L HERALD TRIBUNE, April 22, 2006.[5]  Moreover, the conditions for the transfer to receiving country detention is negotiated in and kept secret. *Id.*  Forced repatriation to torture and indefinite detention would violate immigration laws and the Convention Against Torture.  8 U.S.C. § 1231 note ("[I]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for

---

[4]*Available at* http://www.state.gov/g/drl/rls/hrrpt/2004.

[5]*Available at* http://www.int.com/articles/2006/04/21/news/gitmo.php.

believing the person would be in danger of being subjected to torture.").   The potential danger is acute in the present case.  Transfer should be barred pending resolution of these proceedings or the voluntary and informed consent by Mr. Al Ginco, made with the advice of counsel.

The transfer or forced repatriation of Mr. Al Ginco would limit the Court's jurisdiction to address the merits of his habeas petition.  FED. R. APP. P. 23(a) protects the Court's jurisdiction in the event of a potential transfer.  Although the case law holds that transfer to another custodian does not deprive the court of jurisdiction, transfer to another country could "effectively extinguish [petitioner's] habeas claims by fiat."  Memorandum and Order at 7, *Abdah v. Bush*, No. 04-CV-1254 (D.D.C. Mar. 12, 2005).  "With or without the allegation of improper forms of interrogation in a foreign country, . . . a continuation of their detention without redress to assess its legality could constitute irreparable harm to the Petitioners."  *Id.* at 8.

If, as Respondents claim and the Petitioner does not accept, the United States loses control of the detainees once they are transferred to another country, the Court could lose jurisdiction to consider Mr. Al Ginco's claims.  Upon information and belief, Mr. Al Ginco seeks not only total freedom, but also a determination that he is not an "enemy combatant" in order to clear his name and reputation.  Depriving Mr. Al Ginco of the opportunity to litigate his claims would cause him irreparable harm.

The specific facts of Mr. Al Ginco's case generate special concerns regarding retaliation and persecution.  Those matters will be addressed separately after counsel has had the opportunity to confer with Mr. Al Ginco.

2.    *There Is A Strong Public Interest In Maintaining The Status Quo.*

Mr. Al Ginco has a protected interest in judicial review of his detention and classification as an "enemy combatant." *Rasul v. Bush*, 524 U.S. 466, 484 (2004). Should Respondents seek to undermine that right by unilaterally transferring him from Guantánamo, Mr. Al Ginco should at the very least be afforded the opportunity to be heard first. At a minimum, Respondents should be obligated to adhere to the United States policy prohibiting the transfer of individuals to countries who torture. *Fund for Animals, Inc. v. Espy*, 814 F. Supp. 12, 15 (D.D.C. 1993) (public interest lies "in meticulous compliance with the law by public officials").

3.    *There Are No Countervailing Governmental Interests.*

In contrast to the actual irreparable harms that Mr. Al Ginco faces, there can be no injury to Respondents where, as here, injunctive relief would merely require that they comply with FED. R. APP. P. 23 and provide advance notice to counsel. The only practical effect of a preliminary injunction would be to maintain the status quo to allow counsel sufficient time to consult with Mr. Al Ginco and, should transfer be determined to pose a danger to Mr. Al Ginco's safety, to seek an opportunity to be heard by the Court through appropriate means.

Injunctive relief does not interfere with the diplomatic efforts of the United States. Respondents have detained Mr. Al Ginco in their custody for a currently unknown period in excess of four years. Delaying transfer for 30 days to ensure that the Court reviews any transfer does not constitute even a minimal burden on the government. The balance of harms tilts overwhelmingly in favor of Mr. Al Ginco.

4.    *Mr. Al Ginco Is Likely To Succeed On The Merits And, At A Minimum, Raises Serious And Substantial Questions As To The Legality Of His Detention That Warrant Maintaining The Status Quo.*

Mr. Al Ginco is likely to succeed on the merits of his claims.  In *Rasul*, the Supreme Court noted that the detainees claims "unquestionably describe custody in violation of the Constitution or laws or treaties of the United States."  542 U.S. at 484 n.15.  Last term, the Court also held that the indefinite detention of Mariel Cubans, also regarded by the government as having no protections under the Constitution or laws of the United States, was unlawful.  *Martinez v. Clark*, 543 U.S. 371 (2005).  The government in *Martinez* claimed it had unreviewable discretion under its foreign powers authority to indefinitely detain those persons who it deemed undesirable because they had committed crimes in the United States but could not be deported to Cuba.  Respondents in this case cite to a similar unreviewable authority to detain indefinitely.  Under the reasoning of *Martinez*, there is a likelihood that Mr. Al Ginco will succeed on the merits of his claims.

Even if Mr. Al Ginco could not make that showing, injunctive relief is appropriate because he has demonstrated that his claims raise serious and substantial issues warranting further investigation.  *Washington Metro,* 559 F.2d at 844.  The courts in this district are divided on the merits of the detainees' claims.  *Compare In re Guantánamo Cases,* 355 F. Supp. 2d 443 (D.D.C. 2005) (holding that Guantánamo detainees have some constitutional rights) *with Khalid v Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005) (holding that Guantánamo detainees have no constitutional rights).  Moreover, the Supreme Court has heard argument in *Hamdan v. Bush,* No. 05-184 (U.S. filed Aug. 8, 2005), considering some of the questions involved in whether the process of military tribunals classifying detainees as "enemy combatants" meets constitutional and statutory requirements.  "The

issues raised in these motions are sensitive and involve complex constitutional questions

. . . . Like the issue in *Hamdi v. Rumsfeld, Padilla v. Rumsfeld,* and *Rasul,* there is a

strong probability that they ultimately will be resolved by the Supreme Court."  *Al Marri v.*

*Bush*, 2005 WL 774843 (D.D.C. Apr. 4, 2005).

**D.      The Detainee Treatment Act Is Not A Bar To Consideration Of This Request.**

There are no current impediments to consideration of this motion.  The Detainee

Treatment Act (DTA) does not divest this Court of jurisdiction to consider this motion or

eliminate the Respondents' obligation to comply with Rule 23.  Although the Respondents

have asserted that the DTA strips this Court of jurisdiction to consider any matter relating

to the Guantanamo detainees in *Hamdan v. Rumsfeld*, No. 05-184 (U.S. filed Aug. 8,

2005),  and *Boumediene v. Bush,* No. 05-5062 (D.C. Cir. filed July 12, 2004), the Court has

the authority, indeed the duty, to protect its jurisdiction until the issue is definitively

resolved.  See Shaaban v. Bush, CV 05-892-(CKK)("Until [the DTA] dispute is resolved,

Respondents' argument is premature.")

## CONCLUSION

For each of the foregoing reasons, Mr. Al Ginco respectfully requests this Court to

enter an order under FED. R. APP. P. 23(a) directing Respondents not to transfer or subject

him to involuntary rendition or forcible repatriation without first providing him the opportunity

to consult with counsel, and without prior express authorization from the Court.

Alternatively, Mr. Al Ginco urges the Court to order Respondents to notify the Court and

counsel 30 days in advance of any intent to transfer or repatriate him so that he may

commence any appropriate litigation.  At a minimum, the Court should order that the status

quo be maintained (*i.e.,* that Mr. Al Ginco remain in Guantánamo until counsel has had an

opportunity to confer with him to determine if repatriation is in his interest).

Respectfully submitted on May 2, 2006.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender


/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender


/s/ Patrick J. Ehlers Jr.
Patrick J. Ehlers Jr.
Assistant Federal Public Defender