**Steven T. Wax**
**Assistant Federal Public Defender**
**steve_wax@fd.org**
**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
**steve_sady@fd.org**
**Patrick J. Ehlers**
**Assistant Federal Public Defender**
**patrick_ehlers@fd.org**
**101 S.W. Main Street, Suite 1700**
**Portland, Oregon 97204**
**503-326-2123 Telephone**
**503-326-5524 Facsimile**
**Attorneys for Petitioner**

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDULRAHIM ABDUL RAZAK AL GINCO,** | **CV 05-1310-RJL** |
| **Petitioner,** | **REPLY TO RESPONDENTS' OPPOSITION TO PETITIONERS' MOTIONS FOR PRELIMINARY INJUNCTIONS SEEKING TO PREVENT THEIR TRANSFER OR RELEASE WITHOUT THE COURT'S PRIOR APPROVAL OR, ALTERNATIVELY, TO REQUIRE ADVANCE NOTICE OF THEIR TRANSFER OR RELEASE** |
| **v.** | |
| **GEORGE W. BUSH, et al.,** | |
| **Respondents.** | |

### Introduction

The government's opposition to Mr. Al Ginco's modest request to maintain the status quo  -- by requiring the government to notify the Court and counsel prior to transferring him into the custody of a foreign nation during the pendency of this case is based on a fundamental misunderstanding of the ultimate relief that Mr. Al Ginco seeks,

misstatements of law regarding both the application of Rule 23 to district court habeas proceedings and the standard for preliminary injunctions, and unfounded concerns that the President's military and diplomatic authority will be compromised.

**A.    The Court Retains Authority To Consider This Motion Despite The Pendency Of Litigation Regarding The Effect Of The Detainee Treatment Act.**

This Court should rule on this motion despite the pending appellate litigation regarding the Detainee Treatment Act of 2005.    Until the applicability of the DTA is resolved, this Court retains jurisdiction because the text of the DTA clearly provides that the references to 28 U.S.C. § 2241 are prospective only.  *Adem v. Bush*, 2006 WL 1193853 *7 (D.D.C. Apr. 28, 2006).  Any contrary reading of the statute would implicate serious constitutional doubts as to its validity.

Moreover, maintaining the status quo is both appropriate and necessary.  In fact, the government suggests that these proceedings be stayed until the effect of the DTA is resolved (Opp. at 2).  Mr. Al Ginco requests that any "stay" be effective for both parties. Requiring the government to delay any transfer or forced repatriation while the DTA is litigated merely preserves the status quo.

The government's suggestion that concerns relating to forced repatriation and transfer should only be raised in the ARB process are misplaced because this case presents unique circumstances that cannot be adequately resolved by the Administrative Review Board.    According to the CSRT transcripts, Mr. Al Ginco has substantial concerns regarding transfer to his home country.  Mr. Al Ginco was taken by the United States from a Taliban prison where he had been tortured and accused of being a United States or Israeli spy.  His reputation as a "spy" has followed him to Guantanamo, and he

has been beaten and threatened by other detainees. He advised the tribunal that "I can't go to Syria, they are going to say I'm a spy." CSRT at 12. He has been threatened by other detainees and is housed on a psychiatric ward where he is receiving psychotic medications. CSRT at 3. Given his fears and vulnerability, additional care in any transfer decision is required. Providing advance notice of an intent to transfer is necessary, at least until counsel has had an opportunity to confer with Mr. Al Ginco.

**B.    Mr. Al Ginco Seeks Release From Custody, Not Transfer To The Custody Of Another Government.**

The government's argument is premised on a fundamental misunderstanding of the relief Mr. Al Ginco requests. The government erroneously asserts that the only relief to which Mr. Al Ginco is entitled is transfer to the custody of another government for release or for continued detention, interrogation or prosecution by the other government. Certainly, Mr. Al Ginco seeks release from United States custody; but he most certainly does not seek transfer into the custody of another government that may detain him indefinitely or potentially abuse him, or release in a country that is unable to protect him from those who have threatened him. In contemplating a similar argument by the government, Judge Kennedy commented: "This last contention is perplexing, because it seems beyond question that advocating for release into freedom is not equivalent to advocating for transfer from ongoing detention in one locale to ongoing detention in another." *Abdah v. Bush*, 2005 WL 711814, *4 (D.D.C. Mar. 25, 2005).

Moreover, Mr. Al Ginco also seeks to clear his name of the stigma of having been wrongfully labeled an enemy combatant. *See, e.g., Vitek v. Jones*, 445 U.S. 480, 493-94 (1980) ("A criminal conviction and sentence of imprisonment extinguish an individual's right

to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process."); *Neal v. Shimoda,* 131 F.3d 818, 828-829 (9th Cir. 1997) (classification as a sex offender is an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that the Supreme Court held created a protected liberty interest) (citing *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). Because Mr. Al Ginco does not seek transfer into the custody of another government, this motion to prevent such a transfer without prior authorization and notification should be granted.

**C.    The Government Must Comply With Rule 23(a) During The Pendency Of District Court Habeas Proceedings.**

Rule 23(a) reflects well-settled law that an agency cannot deprive a federal court of jurisdiction to hear a habeas petition by transferring an inmate to another jurisdiction after his petition has been filed.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2005) ("[W]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").  Judge Kennedy in *Abdah* found that Rule 23 applied to the petitions filed in this court and cited the oft-repeated purpose of Rule 23:

> The Rule "was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir.1982) (citing *Jago v. United States Dist. Court*, 570 F.2d 618, 626 (6th Cir.1978), and *Goodman v. Keohane*, 663 F.2d 1044, 1047 (11th Cir.1981)).

*Abdah,* 2005 WL 711814 at *5. Limiting Rule 23(a) to cases on review would give the respondent an unfettered opportunity to defeat district court jurisdiction, obviating a petitioner's opportunity to appeal, and thereby rendering the appellate rule a nullity for the transferred petitioner.

Although he did not grant preliminary relief under Rule 23, Judge Bates observed that limiting the rule's application to only appellate proceedings would create a nonsensical result:

> Because there is no comparable provision in the Federal Rule of Civil Procedure, this interpretation would also lead to the curious result that the United States may transfer an individual out of its custody at any point in a case except for the brief period when the case is on appeal.

*O.K. v. Bush*, 377 F. Supp. 2d 102, 116 n. 14 (D.D.C. 2005). Further, this case is closely linked with the appellate litigation in the District of Columbia Circuit Court. Before this Court appointed counsel, the Court entered a stay order based on parallel appellate proceedings in *Al Odah v. United States*, CA 05-5064 (D.C. Cir. Mar.7, 2005), and *Boumediene v. Bush*, CA Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 7, 2005). The linkage to pending appeals makes application of Rule 23 especially appropriate.

The application of the rule is especially important in the context of transfer to a foreign nation because there may be no remedy for non-compliance. The courts have held that non-compliance with Rule 23(a) will not divest the court of jurisdiction. *Goodman v. Keohane,* 663 F.2d 1044,1047 (11th Cir. 1981). "Here, though, Petitioners' transfer to another nation would assuredly deprive the court of its jurisdiction." *Abdah*, 2005 WL 711814 at *5 . Because there may be no remedy if the petitioner were transferred to the custody of another government, strict compliance with Rule 23(a) is all the more important.

**D.     The Petitioner Has Met The Burden For A Preliminary Injunction.**

The government's argument opposing a preliminary injunction relies on a reasoning error. In essence, the government argues that the Court may not issue a preliminary injunction because the petitioner has not shown that he is likely to succeed on the merits of the preliminary injunction: that he must show a likelihood of success in obtaining a court order preventing a transfer or release (Opp. at 13).

The flaw in this analysis stems from the confusion in what the petitioner seeks, both in relation to this motion for preliminary injunction and his petition for habeas corpus. Here, Mr. Al Ginco seeks to preserve the status quo -- the same ground that the government argued in support of a stay -- pending consideration of the merits of his petition. Mr. Al Ginco seeks "to prevent Respondents from unilaterally and silently taking actions that may render [his] claims moot; thus the injunctive relief Petitioner[] seek[s] would ensure the very same result that the stay itself was entered to secure." *Abdah,* 2005 WL 711814 at *2. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Preservation of the status quo is all Mr. Al Ginco asks.  A preliminary injunction requiring  30-day notice of an intent to transfer, so that counsel can consult with Mr. Al Ginco and assess whether the transfer is in his interest, is necessary because the government has provided no assurance that it will not unilaterally transfer him.  The only assurance that the government has given is that they will consult with the foreign government prior to a unilateral transfer.  This assurance is insufficient to protect Mr. Al Ginco's interests.

The government relies on *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 (D.D.C. 2005), wherein Judge Bates held that injunctive relief for advance notice of intent to transfer was not warranted because the petitioners did not point to a sound basis to challenge the legality of the transfer (Opp. at 13).  To the extent that the government is correct that an independent legal basis must support the injunctive relief against transfer, there are at least two grounds for challenging the legality of the transfer -- Rule 23 and the Court's authority to preserve its jurisdiction under the All Writs Act, 28 U.S.C. § 1651.

Judge Kennedy, upon whom the government relies, explained that Rule 23 provides a legal basis for preserving the status quo:

> Respondents are wrong, however, in arguing that there . . . is no legal basis for judicial involvement in transfer or repatriation decisions regarding Petitioners. To the contrary, transfer of Petitioners without notice and leave of court is forbidden by Fed. R. App. P. 23(a).

*Abdah,* WL 711814 at *4-5.  Rule 23(a) provides a legal basis to stop a unilateral transfer demonstrating "a clear likelihood of success in blocking a transfer made absent notice to, and approval from, the court."   *Abdah,* WL 711814 at *5.

The All Writs Act provides an additional legal basis for the Court to grant the motion for preliminary injunction.  It empowers a district court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651; *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218 (1906) (federal courts "may and should take such action as will defeat attempts to wrongfully deprive parties of the protection of their rights in those tribunals"); *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C.Cir.1996).  Here, the Court should

preserve its jurisdiction by requiring the government to comply with Rule 23(a) or provide 30-day prior notice of an intent to transfer Mr. Al Ginco.

**E.    The President's Authority Over Military And Diplomatic Affairs Is Not Compromised By Requiring Compliance With Rule 23(a) Or 30-day Advance Notice Of Intent To Transfer.**

The government's argument that the maintaining the status quo would intrude on the Executive Branch's foreign policy powers is unfounded.    First, requiring 30-day advance notice of an intent to transfer does not interfere with any diplomatic negotiations for the return or transfer of any detainee.   The decision to transfer is made upon the *completion* of diplomatic negotiations. Second, to the extent that there are concerns about a foreign nation's torture practices becoming public, they, too, are unfounded.   Such information is already public:  the government publishes a human rights report detailing national torture practices, and CAT prevents transfer in individualized cases.  In a CAT situation, transfer is prohibited, obviating the need to inform the Court.  Third, the request for advance notice does not question the Executive's decision to transfer, it merely allows sufficient time to assure that the transfer complies with this country's international obligations.

The government evokes separation of powers concerns, not because of real issues of national security or interference with the diplomatic process, but to prevent the detainee from challenging his forced repatriation or rendition where there is a credible fear of indefinite detention, abuse, and torture.  The courts have a proper role in ensuring that the government's actions are consistent with United States law.  Although the government states that transferring detainees is not intended to strip the court of jurisdiction to hear his claims, a transfer may have just that effect.

**Conclusion**

For these reasons, and those stated in the memorandum in support of the motion for Rule 23(a) Compliance or Preliminary Injunction, the Court should grant the motion to maintain the status quo during the pendency of these proceedings.

Respectfully submitted on May 12, 2006.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender


/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender


/s/ Patrick J. Ehlers Jr.
Patrick J. Ehlers Jr.
Assistant Federal Public Defender