Steven T. Wax
Assistant Federal Public Defender
steve_wax@fd.org
Stephen R. Sady
Chief Deputy Federal Public Defender
steve_sady@fd.org
Patrick J. Ehlers
Assistant Federal Public Defender
patrick_ehlers@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
503-326-2123 Telephone
503-326-5524 Facsimile

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| ABDULRAHIM ABDUL RAZAK AL GINCO, | CV 05-1310-RJL |
|---|---|
| Petitioner, | PETITIONER'S RESPONSE TO SUPPLEMENTAL MEMORANDUM CORRECTING JULY 7, 2006, MOTION FOR PROCEDURES RELATED TO REVIEW OF CERTAIN DETAINEE MATERIALS AND RESPONDING TO SUPPLEMENTAL MEMORANDA OF CERTAIN PETITIONERS |
| v. |  |
| GEORGE W. BUSH, et al., |  |
| Respondents. |  |

In its supplemental memorandum, the respondents correct a factual misstatement in the initial motion, indicating that the scope of the initial review of attorney-client material involved 155 detainees rather than 11 detainees. The respondents also seek to limit the effect that should be given to the decision of the Circuit Court of Appeals for the District of Columbia not to employ a filter

team in *United States v. Rayburn House Office Building, Room 2113*, No. 06-3105 (D.C. Cir. July 28, 2006).

The order entered by the Circuit Court for the District of Columbia regarding the *Rayburn* search clearly reflects that filter teams are appropriate only in the most extreme of circumstances. The order itself reflects this policy preference; the reasoning is supported by the recent case of *In re Grand Jury Subpoenas*, 2006 WL 1915386 (6th Cir. July 13, 2006).

In *Grand Jury Subpoenas*, the Sixth Circuit reversed a district court's order permitting a federal government "filter team" behind a "Chinese wall" to conduct a privilege review regarding attorney-client materials produced by a third-party corporation. The question before the Court was "whether the district court erred in preferring the government's proposed taint team to the appellants' own attorneys to make initial privilege determinations with respect to documents in the third-party subpoena recipient's possession." *Id*. at *4.

At the outset, the Sixth Circuit recognized the fundamental role of the privileges at stake. "The two privileges that all sides concede to be potentially at stake – attorney-client privilege and the work-product doctrine – are well-established and integral to the proper functioning of our legal system." *Id*. at *7. Relying on much of the same basic case law cited by the petitioner here, the court found that the government bears a heavy burden of establishing specific and individualized reasons for overcoming the privilege. *Id*. Even *in camera* inspections by district judges requires a prior showing "weakly analogous to probable cause." *Id*. (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)). In *Zolin*, the Supreme Court noted that the type of dragnet procedure advocated by the government in this case is inappropriate:

> There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents. Courts of Appeals have suggested that *in camera* review is available to

> evaluate claims of crime or fraud only "when justified," . . . or "[i]n appropriate cases," . . . . Indeed, the government conceded at oral argument (albeit reluctantly) that a district court would be mistaken if it reviewed documents in camera solely because "the government beg[ged it]" to do so, "with no reason to suspect crime or fraud."

*Zolin*, 491 U.S. at 571. As to the individual petitioners before the Court, the government has made nothing approaching an individualized showing that the crime or fraud exceptions to the attorney-client privilege apply. Instead, the government proposes a classic fishing expedition that sacrifices entirely the trust necessary to an effective attorney-client relationship.

In finding that the use of the taint team in *Grand Jury Subpoenas* constituted reversible error, the court first noted that such procedures are generally used in "limited, exigent circumstances" where a search warrant has been obtained. *In re Grand Jury Subpoenas*, 2006 WL 1915386, at *10. Rather than having a search warrant, the attorney-client documents have been seized in violation of the protective order without prior permission from the Court. But most importantly, the *Grand Jury Subpoenas* court recognized the obvious flaw in taint team procedure: "the government's fox is left in charge of the appellants' henhouse, and may err by neglect or malice, as well as by honest differences of opinion":

> [T]aint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors. That is to say, the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that taint teams pose a serious risk to holders of privilege, and this supposition is substantiated it by past experience.

*Id*. These concerns are especially great given the statement of Admiral Harris in Exhibit A to the government's motion that he is not only concerned regarding security but "law enforcement and war

crimes investigation." This emphasizes the problem that, once information is divulged, the bell cannot be unrung:

> It is reasonable to presume that the government's taint team might have a more restrictive view of privilege than appellants' attorneys. But under the taint team procedure, appellants' attorneys would have an opportunity to assert privilege *only* over those documents which *the taint team has identified* as being clearly or possibly privileged. As such, we do not see any check in the proposed taint team review procedure against the possibility that the government's team might make some false negative conclusions, finding validly privileged documents to be otherwise; . . .

*Id*. at *11. The court then concluded that the government taint team is inappropriate and held that "the appellants themselves must be given an opportunity to conduct their own privilege review; of course, we can presently make no ruling with respect to the merits of any claimed privilege that may arise therefrom." *Id*.

In the event that this Court determines that the items should not simply be returned, the Court should implement an analogous procedure. Counsel for the petitioner must be involved because there is no way the government can know the myriad potential ways in which documents may be related to representation. The petitioner's counsel should have a first opportunity to review the seized material and segregate material that is clearly privileged for return the petitioner. Any remaining items should be submitted to the Court or a special master for appropriate disposition. Such a procedure would not only protect the attorney-client privilege, it would also protect the attorneys' reasonable expectation of privacy in their communications with the petitioners. *See Lonegan v. Hasty*, 2006 WL 1707258, *12-15 (E.D.N.Y. June 22, 2006) (surveillance of attorney-client conferences of detainees suspected of terrorism is actionable to redress violation of the Fourth Amendment).

The attorney-client privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which

assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). The government's proposed procedure makes a mockery of this basic attorney-client protection in a context in which both the protective order and the basic rule of law require maximum confidence in attorney-client communications.[1] For these reasons, and those stated in the previous briefing, the government's request should be denied.

Respectfully submitted on August 14, 2006.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender


/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Patrick J. Ehlers Jr.
Patrick J. Ehlers Jr.
Assistant Federal Public Defender

---

[1] The Court has jurisdiction to act on this preliminary matter, regardless of ultimate jurisdiction, which the petitioner contends is compelled by *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006). *See United States v. UMW*, 330 U.S. 258, 293 (1947) ("the District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief"); *Al Ghizzawi v. Bush*, No. 05-2378 (JDB) at 2-3 (Aug. 9, 2006) (ordering factual return without reaching jurisdictional question).

**Page 5   PETITIONER'S RESPONSE TO SUPPLEMENTAL MEMORANDUM**