Steven T. Wax, OSB #85012
Federal Public Defender
steve_wax@fd.org
Stephen R. Sady
Chief Deputy Federal Public Defender
steve_sady@fd.org
Patrick J. Ehlers
Assistant Federal Public Defender
patrick_ehlers@fd.org
101 SW Main Street, Suite 1700
Portland, Oregon  97204
Tel:    503-326-2123
Fax:    503-326-5524

Attorneys for Petitioner

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULRAHIM ABDUL RAZAK AL GINCO,<br><br>                                          Petitioner,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>                                          Respondents. | CV 05-1310-RJL<br><br>**REPLY TO NOTICE OF MILITARY COMMISSIONS ACT OF 2006** |

On October 18, 2006, Respondents filed a generic Notice of Military Commissions Act of 2006 (MCA) in numerous habeas corpus cases involving people imprisoned by the Department of Defense in Guantánamo Bay, Cuba (CR 41).  In that notice, Respondents appear to be taking the position that the MCA strips this Court of jurisdiction over Mr. Al Ginco's habeas corpus case.  In his Reply to Respondents' Memorandum in Opposition to Petitioner's Motions to Lift or Modify Stay, Mr. Al Ginco asserted that this Court has jurisdiction to determine that the military has no

authority over him, regardless of statutes that presuppose the existence of military jurisdiction (CR 41). In this pleading, Mr. Al Ginco expands on his arguments regarding the need for immediate action by the Court, the inapplicability of the MCA to his situation, and the reasons why any effort to apply the MCA in the manner suggested by the Respondents would run afoul of the Constitution.

      **A.     Immediate Action By This Court Is Required To Address The Irreparable Injury That Mr. Al Ginco Continues To Suffer**.

Mr. Al Ginco has presented this Court with compelling evidence that conclusively demonstrate that he is a former Taliban prisoner and torture victim who took no belligerent actions against the United States and its allies. Mr. Al Ginco has also presented the Court with a clear body of law that defines habeas corpus as a writ of fundamental importance in our constitutional structure and a writ whose consideration cannot be delayed for purposes of administrative convenience. When an individual has presented a court with compelling facts demonstrating that he is being held in violation of the laws and Constitution of the United States, prompt inquiry by the Judiciary into the legality of the detention is required.

The stay is especially inappropriate in this case because, as briefed previously, this Court has recognized its authority to address challenges to the military's authority over the detainee. *Khalid v. Bush*, 355 F.Supp.2d 311, 329 (D.D.C. 2005). The importance of prompt consideration of this and other issues presented by Mr. Al Ginco requires this Court to modify or lift the stay and address his claims. The fact that similar issues have been presented to other courts should not deter this Court from fulfilling its constitutional obligations. Further, the facts of Mr. Al Ginco's case are such that the Court can reach the merits of his claims without addressing the issues that are currently presented in other cases pending in this Court and in the Circuit Court of Appeals for the District of Columbia.

B.    **Respondents' Interpretation Of The MCA Renders The Statute Unconstitutional**.

    *1.*    *If Construed To Preclude Habeas Corpus Review, The MCA Would, On Its Face, Violate The Due Process Clause, The Separation Of Powers, The Authority Of The Judiciary Under Article III, And The Suspension Clause*.

Respondents rely on a statute that, even as it was being considered, had well-recognized constitutional infirmities. In the debate regarding a proposed amendment to the MCA that would have left habeas corpus for detainees intact, Republican Senator Gordon Smith of Oregon echoed the sentiment of many Senators, in both parties, who opposed the MCA's habeas-stripping provision:

> Permanent detention of foreigners without reason damages our moral integrity regarding international rule of law issues. To quote: 'History shows that in the wrong hands, the power to jail people without showing cause is a tool of despotism.' A responsibility this Nation has always assumed is to ensure that no one is held prisoner unjustly. Stripping courts of their authority to hear habeas claims is a frontal attack on our judiciary and its institutions, as well as our civil rights laws. Habeas corpus is a cornerstone of our constitutional order, and a suspension of that right, whether for U.S. citizens or foreigners under U.S. control, ought to trouble us all.

152 Cong. Rec. S10354-02 (daily ed. September 28, 2006). Because the Legislature did not forebear from enacting an unconstitutional law, the task falls to the Judiciary to perform its role as a check on unconstitutional legislation.

    a.    Our Constitutional Structure Requires Judicial Review Of Executive Detention.

In his Motion to Lift or Modify Stay, Mr. Al Ginco argued that the construction of the DTA sought by Respondents would violate the separation of powers and due process. Unlike the DTA, which purported to strip the federal courts of jurisdiction based on geography, the MCA purports to strip jurisdiction based on a factual determination by the Executive that would, in many habeas

corpus cases, be the very issue on which the Court would need to rule were it addressing the substance of the case.

The Due Process Clause of the Fifth Amendment applies to all persons, not just citizens. *See Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *Plyler v. Doe*, 457 U.S. 202, 210 (1982). In our tri-partite government, due process has historically required that the body that decides whether particular governmental action is lawful must be different from the body that performs that particular action. Thus, the attempt in the MCA to exclude the Judiciary from determining the legality of the Executive's detention violates the protections of the Due Process Clause, the federally-required separation of powers, and the authority of the Judiciary under Article III.

The case law is replete with discussions of the unconstitutionality of collapsing into any one branch of our government the duties that are assigned to others. As the Court stated in granting writs of habeas corpus in *Duncan v. Kahanamoku*, 327 U.S. 304, 322 (1946), the "founders" "were opposed to governments that placed in the hands of one man the power to make, interpret and enforce the laws." *See, e.g., Mistretta v. United States*, 488 U.S. 361, 390 n.17 (1988) (noting constitutional problem if Congress assigned judicial responsibilities to the Executive); *United States v. Klein*, 80 U.S. 128, 147 (1872) (invalidating statute that unconstitutionally stripped the Supreme Court of jurisdiction in violation of separation of powers); *Ex parte Milligan*, 71 U.S. 2, 131 (1866) (deciding against the executive branch the jurisdictional question of whether Milligan was a prisoner of war to whom suspension of habeas corpus applied); *Nasuti v. Scannell*, 906 F.2d 802 (1st Cir. 1990) (recognizing the separation of powers problem with a statute that leaves the Attorney General as the sole judge of an issue determinative of federal court jurisdiction). The jurisdiction-stripping provision of the MCA is at odds with 800 years of Anglo-American history that checked the

Page 4.     **REPLY TO NOTICE OF MILITARY COMMISSIONS ACT OF 2006**

unbridled power of the Executive (in the form of a king) by distributing that power among three co-equal branches of government.

                    b.      Our Constitutional Structure Requires The Writ Of Habeas Corpus As A Judicial Check On The Legality Of Executive Detention That Remains Available Except In Very Limited And Clearly Defined Circumstances.

While Congress's action in the MCA can be viewed as a suspension of the writ, albeit a permanent suspension, it is more appropriately described not as a "suspension" within the meaning of Article 1, § 9, clause 2, but, rather, as a total elimination of the writ for a certain class of people. The concept of "suspension" of the writ of habeas corpus contained in the Constitution is necessarily one involving temporal constraints. In the two limited circumstances set forth in the Constitution, "rebellion" or "invasion," Congress may suspend the writ. When, however, the crisis that necessitated the suspension has passed, the suspension is no longer in place and the writ is once again fully available. Congress has recognized this limitation in the rare instances in which the writ has been suspended. *See, e.g.,* 12 Stat. 775 (the statute suspending the writ in 1863 provided for suspension "during the present rebellion"). By contrast, the MCA does not purport to suspend the writ. Rather, it seeks to eliminate the writ for a particular class of people.

As argued in his Motion to Lift or Modify Stay, the fact that the only reference in the Constitution to the writ of habeas corpus solely is found in the Suspension Clause presupposes the existence of the writ of habeas corpus and its availability for the Judiciary to test the legality of detention by the Executive for citizens and aliens alike. *INS v. St. Cyr*, 533 U.S. 289, 301 (2001). Concomitantly, the fact that the Constitution only gives Congress the authority to suspend the writ in very limited circumstances necessarily means that Congress has no authority to eliminate the writ. *See* Laurence Claus, *The One Court That Congress Cannot Take Away: Singularity, Supremacy And*

*Article III*, San Diego Legal Studies Research Paper Series No. 07-71 at 63-70, (2006), available at http://ssrn.com/abstract=935368; *United States v. Klein*, 80 U.S. 128, 145-48 (1872) (rejecting Congress's efforts to strip the Supreme Court of jurisdiction). Thus, the elimination of the writ in the MCA exceeds Congress's authority under Article I and under the Suspension Clause, invades the authority of the Judiciary under Article III, and violates Mr. Al Ginco's right to independent review of the executive detention under the Due Process Clause.

        2.      *As Applied To Mr. Al Ginco, The DTA And MCA Violate Due Process.*

While the procedures remaining to detainees under the MCA are unconstitutional and inadequate on their face, they are also unconstitutional and inadequate as applied in this case. With relatively little effort, and only through the assistance of counsel in this habeas case, Mr. Al Ginco was able to gather the exhibits that have been submitted to the Court (CR 37). The CSRT procedure did not permit him, as an incarcerated person without any access to counsel or investigation, to have any possibility of generating this information. The Department of Defense (DOD) made no effort to investigate or confirm Mr. Al Ginco's claims of innocence in its own right. Review of the voluminous records produced by the DOD in response to litigation by the Associated Press reveals similar gross inadequacies in all other CSRT proceedings. Only this Court through habeas corpus can provide adequate protections and process to do justice. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 534-36 (2004) (process is due when a decision is made to continue holding a person who has been seized on a battlefield and courts are to inquire into the individual case).

    3.     *If The MCA And DTA Are Construed To Preclude Habeas Corpus Review Through 28 U.S.C. § 2241, Mr. Al Ginco Is Entitled To Proceed In Habeas Corpus Under The Common Law And Constitutional Writs Of Habeas Corpus.*

In his Motion to Lift or Modify Stay, Mr. Al Ginco argued that construction of the DTA as an abrogation of jurisdiction under 28 U.S.C. § 2241 would not preclude resort to the common law or constitutional writ of habeas corpus, and pointed out the support in Supreme Court jurisprudence and in the history of the writ. The arguments raised therein are equally applicable to any construction of the MCA that works the same result. This Court would then be required to hear the petition or refer the case to the Supreme Court for consideration of Mr. Al Ginco's petition for writ of habeas corpus as an original writ before that court.

    4.     *Retroactive Application Of The Purported Jurisdiction-Stripping Legislation To Mr. Al Ginco Would Constitute A Bill Of Attainder.*

In his Motion to Modify or Lift Stay, Mr. Al Ginco argued that the DTA, if interpreted in the manner in which Respondents suggest, would constitute an unconstitutional Bill of Attainder. While the MCA purports to cover more individuals than were covered by the DTA, the portion of that statute that purports to address the pending petitions is infected by the same defects that rendered the DTA a Bill of Attainder: the statute applies to an easily identifiable group of plaintiffs in pending cases, results in loss of access to the courts and loss of liberty, and is directed at a prejudged politically unpopular group.

**C.      The Doctrine Of Constitutional Avoidance Is Applicable To This Case**.

More than 100 years ago, the Supreme Court held, with respect to construction of statutes, "The elementary rule is that every reasonable construction must be resorted to in order to save a statute from unconstitutionality." *Hooper v. California*, 155 U.S. 648, 657 (1895).   When confronted with amendments to 28 U.S.C. § 2241 and 8 U.S.C. § 1252 that included a purported habeas corpus- stripping provision in *St. Cyr*, the Court provided further guidance with respect to the doctrine of constitutional avoidance:

> [I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible' . . . we are obligated to construe the statute to avoid such problems.

533 U.S. at 299-300 (citations omitted).  *See also Martinez v. Clark*, 543 U.S. 371, 381-82 (2005). To avoid the compelling arguments that the DTA and MCA are unconstitutional, this Court must determine, under the doctrine of constitutional avoidance, whether the MCA is susceptible to a construction that is "fairly possible" that would save it from the constitutional infirmities.  As set out below, such a construction is readily available.

> 1.      *This Court Should Lift Or Modify The Stay Because Section 7 Of The MCA Is Inapplicable To Mr. Al Ginco's Case*

The essence of Mr. Al Ginco's argument is that: 1) the authority of the DOD to seize and detain individuals is limited; 2) the DOD does not, and never has, had jurisdiction over Mr. Al Ginco because he does not fall within the class of persons the DOD is authorized to seize and detain; 3) thus, no DOD tribunal has jurisdiction over Mr. Al Ginco or is competent to make any determinations with respect to him; 4) any withdrawal of jurisdiction from the federal courts in the MCA is limited to those persons over whom the DOD has jurisdiction; 5) the federal courts always retain the authority to determine their own jurisdiction; 6) because Mr. Al Ginco is not within the

class of persons the DOD was authorized to seize and detain or to whom section 7 of the MCA applies, either (a) the MCA must be construed in a manner that results in the conclusion that he is not within the class of persons to whom the jurisdiction stripping provision can be applied, or, alternatively, (b) the Court should conclude that section 7 of the MCA violates several provisions of the Constitution and cannot be applied to Mr. Al Ginco's case.

> 2. *The MCA Is Inapplicable To Mr. Al Ginco's Case Because He Is Not An Enemy Combatant.*

As a preliminary matter, Respondents' notice makes no claim that the MCA has altered in any manner the authority of the DOD to have seized, and to continue to detain, Mr. Al Ginco. He was not, and is not, an enemy combatant, nor an unlawful enemy combatant under any definitions of those terms.[1]

As argued in pleadings previously filed in this matter, Respondents' authority to seize and detain individuals in the military prison in Guantánamo Bay, Cuba, is limited by the authorization granted by Congress in the Authorization for the Use of Military Force (AUMF) of September 18, 2001, and the laws of war. *See Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006); *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004). Seizure of a person who does not fall within the class of people who may be seized and imprisoned pursuant to that authority is unlawful because the DOD has no authority over such a person and no tribunal constituted by the DOD is competent to take any action with respect

---

[1] The MCA uses a different definition of enemy combatant than previously articulated by Respondents. The first definitional subsection of the MCA, 10 USC §948a(1)(I), is more restrictive and, if applicable to section 7, reinforces, through its use of the traditional terms "lawful enemy combatant" and "unlawful enemy combatant," the arguments Mr. Al Ginco has made that the authority of the DOD is cabined by the laws of war. *See Ex parte Quirin,* 317 U.S. 1, 31 (1942). Subsection (ii) is broader but can have no application to Mr. Al Ginco under any circumstances because it is infected by the same constitutional violations that Mr. Al Ginco has addressed with respect to the DTA and sets out in this pleading.

**Page 9.     REPLY TO NOTICE OF MILITARY COMMISSIONS ACT OF 2006**

to any such person.  Mr. Al Ginco is not within the class of persons the DOD may seize and detain.

Hence, the MCA is inapplicable to his case.

> 3.     *Mr. Al Ginco Does Not Fall Within The Class Of People, "Aliens" "Properly Detained" as "Enemy Combatants," For Whom The MCA Purports To Strip Jurisdiction Over Habeas Corpus Cases From The Federal Courts.*

A further reason the MCA does not apply is derived from Section 7(a), a new section to

28 U.S.C. § 2241(e)(1) that purports to strip the federal courts of jurisdiction over habeas corpus

cases:

> No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

The key phrases in this section of the statute involve the "determin[ation]" that an alien has been

"properly detained" as "an enemy combatant."  Mr. Al Ginco does not fit this definition.

The rules of statutory construction require this Court to give meaning to every word in the

statute.  "'[E]very clause and word of a statute'" should, "'if possible,'" be given "'effect.'"

*Chickasaw Nation v. U.S.,* 534 U.S. 84, 93 (2001) (citing *United States v. Menasche*, 348 U.S. 528,

538-539 (1955)).  A "'statute must, if possible, be construed in such fashion that every word has

operative effect.'"  *Landgraf v. USI Film Products*, 511 U.S. 244, 295 (1994) (citing *United States

v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992) (quoting *Menasche*, 348 U.S. at 538-539).  This

requires the Court to give meaning to the term "properly," a modifier in the statute of the term

"detained."  Doing so makes clear that not all "enemy combatants," nor all people who have been

"determined to be enemy combatants," but only people who have been "properly" detained as enemy

combatants, are subject to the statute that purports to strip jurisdiction from the federal courts.  Mr.

Al Ginco does not fit any definition of the phrase "enemy combatant," therefore, he has not been "properly" detained and the DOD has no jurisdiction over him.

The evidence shows a second reason why Mr. Al Ginco has not been "properly" "detained." In *Hamdan*, the Supreme Court detailed the steps that the Executive, through the military, must go through in order to seize and to detain an individual as an enemy combatant. Those steps include on-site determinations by a battlefield commander and subsequent determinations that comply with the laws of war. *Hamdan*, 126 S. Ct. at 2776-77. There is no information showing that any battlefield determination was made, under any standards, by any responsible official. Thus, a straightforward construction of section 7 of the MCA reveals that Mr. Al Ginco was not "properly detained" and is, therefore, not within the class of persons covered by the MCA. This Court retains habeas corpus jurisdiction over Mr. Al Ginco.

A third reason Mr. Al Ginco has not been "properly detained" lies in the use of the products of Taliban torture. Article 15 of the Convention Against Torture and customary international law foreclose a detention decision predicated on torture. The evidence that the false confession under merciless Taliban torture underlies Mr. Al Ginco's detention bars application of the MCA to him.

### D.    This Court Retains Jurisdiction To Determine Its Jurisdiction.

Respondents apparently assert that the MCA strips this Court of jurisdiction based on their determination that Mr. Al Ginco is an enemy combatant. In his reply to Respondents' Consolidated Memorandum in Opposition to Petitioner's Motions to Lift or Modify Stay, Mr. Al Ginco referred this Court to the long-established body of law that makes clear that the federal courts always retain jurisdiction to determine whether they have jurisdiction. Reply to Memorandum in Opposition at 4-5. The Respondents' reliance on the MCA ignores this long-established body of law and the core jurisdictional question that Mr. Al Ginco's case presents.

**Page 11.    REPLY TO NOTICE OF MILITARY COMMISSIONS ACT OF 2006**

**E.    Arguments And Facts Presented Are Not Pending Before Any Other Court So That There Is No Basis For Maintaining The Stay**.

In addition to claiming that the MCA strips this Court of jurisdiction over Mr. Al Ginco (a position that is inconsistent with the law and the facts), Respondents urge this Court to continue to stay these proceedings because issues related to the applicability of the MCA are pending in other courts.  This Court should reject that request because none of the cases pending in other courts include the same jurisdiction-based argument set out above and, per force, none involve the same facts present in this case.

**F.    The Prohibition Against Retroactive Application Of Statutes Precludes Application Of The Purported Jurisdiction-Stripping Language To Mr. Al Ginco's Petition For Writ Of Habeas Corpus**.

In addition to the reasons set out above, section 7 of the MCA is inapplicable to Mr. Al Ginco because it operates prospectively only with respect to pending habeas corpus cases.

Following the new section (e)(1) to 28 U.S.C. § 2241, which specifically mentions "writ of habeas corpus," Congress added a new subsection (e)(2) which addresses other causes of action against the government:

> Except as provided in paragraphs 2 and 3 of § 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

The amendment to § 2241 goes on to include an "effective date" that Respondents argue applies to all cases including habeas cases:

> The amendment made by subsection (a) shall take effect on the date of enactment of this act and shall apply to all cases, without exception, pending on or after the date of enactment of this act which relate to any aspect of the detention, transfer,

**Page 12.    REPLY TO NOTICE OF MILITARY COMMISSIONS ACT OF 2006**

treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001.

Military Commission Act of 2006, Pub.L. No. 109-366, §7(b), 120 Stat. 2600 (Oct. 17, 2006).

Contrary to the Respondents' view, the effective date section renders the amendments to 28 U.S.C. § 2241 retroactive solely with respect to the types of actions identified in subsection (e)(2) but not subsection (e)(1). This is made clear by the effective date provision's specific inclusion of language that directly tracks the language of subsection (e)(2): the action over which jurisdiction is stripped must "relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention." The phrase "habeas corpus," which appears in (e)(1), does not appear in the "effective date" provision of the MCA. The construction of the statute that Mr. Al Ginco makes is required by the general rules of statutory construction. *See Hamdan*, 126 S. Ct. at 2765-66 (discussing *Lindh v. Murphy*, 521 U.S. 320 (1997) and the drawing of negative inferences from exclusion of language from one provision of a statute that appears in another). If the MCA is applicable at all, Mr. Al Ginco's petition for habeas corpus falls within subsection (e)(1) and is not affected by the effective date clause.

**Conclusion**

For all the reasons set forth herein and in the pleadings previously filed in this matter, neither the DTA nor the MCA can be applied to Mr. Al Ginco's case as a matter of statutory construction or under the Constitution. Mr. Al Ginco's habeas corpus petition is properly before this Court under 28 U.S.C. § 2241 or under the constitutional and common law writ of habeas corpus. Mr. Al Ginco's freedom from detention as an unjustly held Taliban prisoner and torture victim is in full accordance with the United States' principles and policies. *See* President George W. Bush, Address to a Joint Session of Congress and the American People, September 20, 2001 ("And tonight, the

United States of America makes the following demands on the Taliban . . . Release all foreign nationals . . . you have unjustly imprisoned."). Mr. Al Ginco urges this Court to modify or lift the stay and address the merits of his petition for writ of habeas corpus.

      RESPECTFULLY SUBMITTED November 7, 2006.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Patrick J. Ehlers
Patrick J. Ehlers
Assistant Federal Public Defender