
**Steven T. Wax, OSB #85012**
Federal Public Defender
steve_wax@fd.org
**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
**Patrick J. Ehlers**
**Assistant Federal Public Defender**
patrick_ehlers@fd.org
101 SW Main Street, Suite 1700
Portland, Oregon 97204
Tel:    503-326-2123
Fax:    503-326-5524

**Attorneys for Petitioner**

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDUL RAHIM ABDUL RAZAK AL GINCO,**<br><br>Petitioner,<br><br>v.<br><br>**GEORGE W. BUSH, et al.,**<br><br>Respondents. | CV 05-1310-RJL<br><br>**EMERGENCY MOTION FOR HEARING REGARDING STAY**<br><br>**EXPEDITED CONSIDERATION REQUESTED** |

The petitioner, Abdul Rahim Abdul Razak Al Ginco, respectfully moves this Court for an expedited hearing of his Motion to Stay on the following grounds: 1) Abdul Rahim faces imminent psychological and physical damage; 2) the Respondents recently have begun harsher treatment based on the Guantánamo commander's conclusion that all detainees still at Guantánamo are terrorists; and 3) Abdul Rahim has made an the extraordinary showing that he is innocent of being an enemy

**PAGE 1.    EMERGENCY MOTION FOR A HEARING REGARDING STAY**

combatant or terrorist and was outside the jurisdiction of the military at the time of his seizure. The Court should hear and rule on the stay forthwith in order to reach a decision on the merits of the Motion for Summary Judgment and relieve the petitioner from further injury or to provide an adverse decision from which the petitioner can seek expedited review in the Court of Appeals.

    A.    *The Petitioner Is In Psychological Crisis.*

As reflected in the declaration of counsel, Abdul Rahim is currently in acute psychological distress. A long-planned meeting with counsel had to be deferred because the visit, although intensely desired by both Abdul Rahim and his counsel, was not medically approved. He recently was under medical observation and had suffered self-injury, as reflected in the attached JTF-Gitmo Habeas Attorney Answer Form dated December 11, 2006 (Exhibit A).

Counsel, with the much-appreciated assistance of Joint Task Force and Department of Justice attorneys, met with Abdul Rahim on December 13, 2006. From the interview, it was apparent that, as reflected in the attached declaration, Abdul Rahim is under extreme psychological pressure and has visible injuries. Although counsel has provided information to the JTF Medical Group in the hopes of ameliorating this situation, the psychological and physical risks are imminent and continuing.

As reflected in the statement of Dr. J. David Kinzie, an internationally recognized expert on the psychological effects of torture and the treatment of torture victims, the Taliban's documented torture of Abdul Rahim for almost two years before his coming into American custody would create special vulnerabilities, including Torture Syndrome and Post-Traumatic Stress Disorder (Exhibits B and C). Dr. Kinzie's states that the psychological results of the Taliban torture make the behavioral modification structure at Guantánamo damaging and ineffective:

PAGE 2.    EMERGENCY MOTION FOR A HEARING REGARDING STAY

To provide treatment for these individuals is extremely difficult and requires a whole new setting in which safety, continuity and human contact are emphasized. In the present situation not all of that is possible, but clearly it's important to avoid unpredictable punishment as this duplicates the ongoing thoughts of torture, of which the consequences are unpredictable and often unending. Specifically, behavior modification of operant conditioning type is contraindicated because contingency behavior programs cannot modify what is internally represented in these patients' minds. At the same time, it is important that there be continuity and predictability to the everyday life. I think that having a safe environment which is predictable and provides continuity of care with the same humans being involved in the treatment is very helpful. To the extent possible, it is necessary to have a supportive environment and empathetic relationships by care givers who recognize the trauma he has undergone. There are also effective medicines for some of these symptoms and it would be useful to have a psychiatric evaluation so that the syndrome could be fully identified and appropriate treatment given by someone familiar with the syndrome and its treatment.

Abdul Rahim's psychological vulnerability is reinforced by the attached letter of Professor Darius Rejali, an internationally recognized expert on torture who also has reviewed the case (Exhibit E). Through his unique background in the techniques and sociology of torture, Professor Rejali provides specific corroboration of the torture Abdul Rahim endured at the hands of the Taliban. He finds that Abdul Rahim's accounts of torture, which are based on declassified notes (Exhibits D and G), are credible.

Although Abdul Rahim had previously spent substantial time in the psychology ward, he had been housed in a relatively comfortable setting – until a recent change in policy – because he had earned better treatment. The psychological distress of indefinite detention of a Taliban torture victim is being exacerbated by the inappropriate placement of Abdul Rahim in a harsh maximum-security environment.

PAGE 3.    EMERGENCY MOTION FOR A HEARING REGARDING STAY

B.  *The Authorities At Guantánamo Have Withdrawn Privileges And Determined To Treat All Remaining Detainees As Terrorists.*

Abdul Rahim's intense psychological distress is occurring in the context of the current push to treat the detainees more harshly, regardless of prior good behavior. The commander of Guantánamo recently acknowledged both the withdrawal of privileges for good behavior and the treatment of all detainees as terrorists. Tim Golden, *Military Taking A Tougher Line With Detainees, Rewards System Ends at Guantanamo Prison*, New York Times, Dec. 16, 2001, at 1 (Exhibit H). For the past two years, military authorities have provided "incentives for good behavior [and] steady improvements in their living conditions" to manage detainees. *Id.* Abdul Rahim, after initial time spent in the psychological ward, worked himself into a position of relative safety and comfort.[1]

Harsher treatment of this Taliban torture victim already has created, and continues to create, imminent risk of psychological and physical damage. The privileges awarded to Abdul Rahim have apparently been taken away based on a change of policy. The commander of Guantánamo stated that the harsher treatment was based on "his conviction that all of those now held here are dangerous men. – 'They're all terrorists; they're all enemy combatants.'" *See also* Suleiman al-Khalidi, *Guantanamo Conditions Said Worse*, Reuters, Jan. 26, 2007 (Exhibit I). The change in policy has contributed to Abdul Rahim's psychological distress, which in turn has led to physical injury.

As set out in Dr. Kinzie's letter, the use of behavior modification techniques and the irrational deprivation of privileges creates a dangerous psychological milieu for a victim of Post-Traumatic Stress Disorder. What may be perceived by guards and other prison custodians as bad

---

[1] As indicated in the sworn declaration of freed detainees, Abdul Rahim has been treated harshly by other detainees because he was reputed to be an American spy based on his incarceration by the Taliban. Docket Sheet 37, Exhibit 102, paragraph 18; Docket Sheet 39, Exhibit 131, paragraph 9.

PAGE 4.  EMERGENCY MOTION FOR A HEARING REGARDING STAY

behavior by Abdul Rahim is in fact the manifestation of extreme psychological distress that is directly traceable to the severe human-rights violations he suffered at the hands of the Taliban. Continuing detention under the circumstances established in this case creates imminent and severe risks to the mental health and physical safety of Abdul Rahim.

C. *The Immediate Threat Of Further Psychological And Physical Injury Should Be Evaluated In The Context Of The Extraordinary Showing Made In The Motion For Summary Judgment.*

Abdul Rahim has presented evidence, without contradiction from Respondents, that establishes that he was never within the military's jurisdiction because he was a prisoner and torture victim of Taliban extremists for almost two years prior to the time he was seized by the Respondents. Not only was he not an enemy, Abdul Rahim volunteered, through journalists, to be a witness for American authorities to the human-rights violations he and others suffered at the hands of the Taliban.[2] Neither the Combatant Status Review Tribunal nor the Administrative Review Board include any significant classified material. All of Respondents' allegations have been addressed by Abdul Rahim and are demonstrably false. The videotape is obviously false and the product of torture because he would never have claimed to be an American and an Israeli spy without the horrendous torture he suffered.

Abdul Rahim is living a Kafka-esque nightmare. As reflected in the Statement of Material Facts and Supporting Exhibits, there is no question that Abdul Rahim is a Taliban torture victim and political prisoner. Based on his specialized knowledge, Professor Rejali confirmed the credibility

---

[2] Docket Sheet 37, Exhibit 108 at 14; Docket Sheet 3, Exhibit 125 at 2 ("[T]he other four 'prisoners' were desperate to be interviewed by the FBI. After repeated requests, passed on by journalists, they got their wish 12 days ago, when three federal agents arrived at the jail. Now all five face being sent to Cuba. 'The bizarre thing is,' the U.S. source said, 'they are now extremely cheerful. They think this is a good thing. We are not sure what to make of them.'").

PAGE 5.   EMERGENCY MOTION FOR A HEARING REGARDING STAY

of Abdul Rahim's description of his torture at the hands of the Taliban. Dr. Kinzie has shown how continued detention in Guantánamo is causing immediate danger to Abdul Rahim. The strong precedent rejecting long-term stays, briefed previously in the pending stay motion, is especially at issue where, based on the record before the Court, Abdul Rahim is innocent of being an enemy combatant, poses no risk to the United States, and is suffering psychological torture on top of the brutal physical torture inflicted on him by the Taliban.

D.  *The Court Should Hear The Stay Motion and Rule Forthwith To Reach The Merits Or To Provide The Basis For Expedited Review By The Court Of Appeals.*

The indefinite stay has been in place for over a year. The petitioner moved for summary judgment and to lift the stay almost four months ago. The absence of a ruling, in effect, denies the Motion to Lift Stay and keeps the indefinite stay in place. Given the facts of Abdul Rahim's case – which are substantially different from the cases before the Court of Appeals – this Court should set this matter for a hearing and rule forthwith. The relevant procedural chronology is as follows:

| | |
|---|---|
| June 30, 2005: | Petition for Writ of Habeas (Docket Sheet 1) |
| July 18, 2005: | Respondents' Motion to Stay (Docket Sheet 2) |
| October 24, 2005: | Order Granting Stay Pending Resolution of Appeals in *Khalid v. Bush*, No. 04-CV-1142-RJL, *Boumediene v. Bush*, No. 04-CV-166-RJL, and *In re Guantánamo Bay Detainee Cases*, No. 02-CV-0299 (Docket Sheet 5) |
| April 11, 2006: | Notice of Appearance of present counsel (Docket Sheet 11) |
| May 2, 2006: | Motion re Transfer (Docket Sheet 15) |
| June 23, 2006: | Interlocutory Appeal regarding Order denying motion regarding transfer (Docket Sheet 19) |
| July 7, 2006: | Respondents' Motion regarding filter team (Docket Sheet 20) |
| August 28, 2006: | Order Denying Motion regarding filter team (Docket Sheet 32) |

PAGE 6.   EMERGENCY MOTION FOR A HEARING REGARDING STAY

September 21, 2006:   Motions to Lift Stay and for Summary Judgment (Docket Sheet 33, 34)

October 5, 2006:   Respondents' Opposition to Motion to Lift Stay (Docket Sheet 36)

October 17, 2006:   Reply to Opposition to Motion to Lift Stay (Docket Sheet 40)

October 18, 2006:   Notice re Military Commission Act (Docket Sheet 41)

November 8, 2006:   Reply to Notice regarding the Military Commission Act (Docket Sheet 44)

The petitioner should either obtain relief pursuant to a summary judgment motion or suffer an adverse ruling on the stay or the summary judgment motion upon which he can seek expedited review in the Court of Appeals.

**Conclusion**

Abdul Rahim is suffering current and imminent psychological and physical harm. Whatever policies would favor continued stay of his case are far outweighed by the unique and compelling facts of his case. We respectfully request that the Court set this matter for an emergency hearing forthwith. The Respondents, through DOJ attorney Andrew I. Warden, opposes this request.

RESPECTFULLY SUBMITTED this January 29, 2007.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Patrick J. Ehlers
Patrick J. Ehlers
Assistant Federal Public Defender