Steven T. Wax, OSB #85012
Federal Public Defender
steve_wax@fd.org
Stephen R. Sady
Chief Deputy Federal Public Defender
steve_sady@fd.org
Patrick J. Ehlers
Assistant Federal Public Defender
patrick_ehlers@fd.org
101 SW Main Street, Suite 1700
Portland, Oregon 97204
Tel: 503-326-2123
Fax: 503-326-5524

Attorneys for Petitioner

PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULRAHIM ABDUL RAZAK AL GINCO,<br><br>Petitioner,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>Respondents. | CV 05-1310-RJL<br><br>REPLY TO RESPONDENT'S OPPOSITION TO EMERGENCY MOTION FOR HEARING REGARDING STAY |

Introduction

The Respondents do not contradict a single fact upon which Abdul Rahim's motions are based. On the law, the Respondents omit the limitation in the Detainee Treatment Act

to the proceedings before the Combatant Status Review Tribunal. This case involves a different question: whether, based on facts extrinsic to the CSRT, the military lacks jurisdiction to detain Abdul Rahim and, therefore, no competent tribunal has determined him to be an enemy combatant, a status of which Abdul Rahim is factually innocent. The factual development and legal issues in this case are unique. Especially based on the acute physical and mental suffering Abdul Rahim is now enduring, this Court should hear the motions and make a ruling based on the distinct and compelling facts and law that render Abdul Rahim's continued detention unlawful.

**A.      This Court Provides The Only Review For A Jurisdictional Challenge Based On The Lack Of Military Jurisdiction And Consequent Failure Of Any Competent Tribunal To Designate Abdul Rahim As An Enemy Combatant.**

The Respondents claim that the Detainee Treatment Act provides exclusive jurisdiction to determine the validity of any final decision of the Combatant Status Review Tribunal that "an alien is properly detained as an enemy combatant." Opp. at 3. The Respondents then omit the key limitation on Circuit Court jurisdiction, which is contained in the same quoted subsection. Section 1005(e)(2)(C) of the DTA specifically limits the direct jurisdiction of the Court of Appeals to the procedures and standards applied, not to the underlying jurisdiction of the military:

> (C) SCOPE OF REVIEW.—the jurisdiction of the United States Court of Appeals for the District of Columbia Circuit on any claims with respect to an alien under this paragraph shall be limited to the consideration of –

      (i) whether the status determination of the Combatant Status Review Tribunal with regard to such alien was consistent with the standards and procedures specified by the Secretary of Defense for Combatant Status Review tribunals (including the requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence and allowing a rebuttal of presumption in favor of the Government's evidence); and

      (ii) to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to make the determination is consistent with the Constitution and laws of the United States.

Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680. This limitation is critical because it establishes that, without this Court's habeas review, the writ has been eliminated or, in the alternative, suspended in the absence of an invasion or insurrection, in violation of the Constitution.

Abdul Rahim has established in his pleadings and proof the absence of military jurisdiction over him: 1) no relevant event took place temporally after the Authorization for the Use of Military Force; 2) a Taliban torture victim and political prisoner is not an enemy combatant under any plausible definition; and 3) Abdul Rahim's detention is based on the products of barbaric acts that fall within any conceivable definition of torture, in violation of the Convention Against Torture and the State Department's adoption of Article 15 of the CAT for the purposes of Guantánamo detainees. Memorandum In Support Of Motion For Partial Summary Judgment at 5-16 (Docket Sheet 37). Under the laws of war recognized in *Hamdan v. Rumsfeld*, 126 S.Ct. 2749 (2006), in the absence of an allegation that Abdul

Rahim committed an act of unlawful warfare – which has not been alleged against him – he is entitled to be free. Memorandum at 6.

The habeas corpus jurisdiction that is not addressed in the DTA has been recognized by this Court in *Khalid v. Bush*, 355 F.Supp. 311, 329 (D.D.C. 2005), which cited to *Application of Yamashita*, 327 U.S. 1, 6 (1946), for federal court jurisdiction to determine "the legality of the 'authority of those detaining the petitioner.'" This Court recognized that a challenge to the underlying jurisdiction of the military – a challenge that would establish that no competent tribunal had provided a basis for detention – was cognizable in the District Court. Although Khalid apparently made concessions that negated this argument, Abdul Rahim not only makes the arguments but supports them with sworn, uncontroverted testimony establishing that no competent tribunal has made a determination in his case. Motion To Lift Or Modify Stay at 8-9 (Docket Sheet 35).

The government's reliance on *Hamdan v. Rumsfeld*, 464 F.Supp. 2d 9 (D.D.C. 2006), (appeal pending), is both factually distinguishable and legally erroneous on the relevant point. First, Hamdan is charged with violations of the law of war in the military commissions and does not contest that he was seized during the time covered by the AUMF. In contrast, Abdul Rahim is a "nonenemy alien" who, as noted in the *Hamdan* opinion, had the same habeas corpus rights as citizens prior to and after 1789. *Hamdan, supra*, at n.13. Further, no allegations were made in *Hamdan* that the detention is the result of the Taliban's brutal physical torture, as occurred in the present case.

Second, the reasoning of *Hamdan* is fundamentally flawed. The Court ultimately finds determinative the fact that Cuba is not United States territory. In *Rasul v. Bush*, 542 U.S. 466, 475 (2004), the Supreme Court accepted the premise that Guantánamo Bay is not part of the United States, but still found jurisdiction based on the United States' exercise of "plenary and exclusive jurisdiction" based on treaties and leases with Cuba. By focusing again on whether Guantánamo Bay is part of the United States, the *Hamdan* court addressed an argument that had been decisive to the *Rasul* district court, but that had been deemed irrelevant by the Supreme Court. *Compare Rasul v. Bush*, 215 F.Supp.2d 55, 68-70 (D.D.C. 2002), *with Rasul*, 542 U.S. at 480-81.

Further, Abdul Rahim's status as a witness provides an additional nexus to the United States that supports this Court's jurisdiction. Based on Abdul Rahim's claims in sworn testimony, and as verified by the evidence, Abdul Rahim should have a protected status as a federal witness to the crimes committed against him. His initial contact with federal investigative authorities was at his own behest: the CSRT includes his account of the American detention beginning with his desire to be a witness "against the Taliban in court;"[1] freed detainee Ayrat Vahkitov swore that Abdul Rahim "offered to provide testimony about the use of torture against us by the former regime,"[2] and contemporaneous news reports corroborate that prisoners, including Abdul Rahim, "were desperate to be interviewed by the

---

[1] Docket Sheet 37, Exhibit 108 at 14.

[2] Docket Sheet 37, Exhibit 102 at ¶ 10.

Page 5 REPLY TO RESPONDENT'S OPPOSITION TO EMERGENCY MOTION FOR HEARING REGARDING STAY

FBI" and "got their wish 12 days ago, when three federal agents arrived at the jail."[3] By providing evidence to the United States, he should be protected by the constitutional right to be a witness in federal court recognized in *In re Quarles*, 158 U.S. 532, 536 (1885)(the constitutional right to bear witness to a violation of law "does not depend upon any of the amendments to the constitution but arises out of the creation and establishment by the constitution itself of a national government, paramount and supreme within its sphere of action.").

Abdul Rahim's first contacts with American authorities, initiated to report violations of international humanitarian law including the CAT, carried an implied protection from arbitrary detention. As a nonenemy alien who has sought American assistance, as opposed to an enemy taken on the battlefield, Abdul Rahim has sufficient connection to this country that warrants the protection of its courts. In contrast to the facts of *Hamdan*, Abdul Rahim not only has five yeas of American custody but initial voluntary contact with American authorities as a witness to create a sufficient relationship to warrant this Court's protection.[4]

The District of Columbia Circuit Court of Appeals recently emphasized that persons held overseas, in the absence of procedural safeguards, can assert sufficient bases for jurisdiction to require a ruling on the merits in *Omar v. Harvey*, No. 06-5126, 2007 WL

---

[3] Docket Sheet 37, Exhibit 125 at 2

[4] The Supreme Court has expressly prohibited long-term detention for interrogation purposes. *Hamdi v. Rumsfeld*, 542 U.S. 507, 521 (2004)("Certainly, we agree that indefinite detention for the purpose of interrogation is not authorized.").

Page 6 REPLY TO RESPONDENT'S OPPOSITION TO EMERGENCY MOTION FOR HEARING REGARDING STAY

420137 (D.C. Cir. Feb. 9, 2007). In *Omar*, an American citizen held in Iraq by the Multinational Force-Iraq successfully invoked habeas jurisdiction to challenge his transfer to Iraqi authorities. The *Omar* opinion included a number of observations that support this Court's jurisdiction: 1) the writ of habeas corpus plays a central role in the American constitutional systems (*id.* at *3); 2) the writ is at its strongest where no criminal conviction has occurred (*id.* at *6)("[W]here, as here, the Executive detains an individual without trial, the risk of unlawful incarceration is at its apex"); 3) the Court's authority over the Respondents is sufficient for this Court's jurisdiction (*id.* at *7)(finding that the custodians were amenable to service in the District of Columbia); 4) the enemy combatant determination is within the federal court's time-honored and constitutionally mandated role (*id.* at *8)(citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 535 (2004)); and 5) habeas hearings are assumed to be more than a question of administrative procedures, but include the development of "defects in the government's case [and] the introduction of exculpatory evidence" (*id.* at *11). The *Omar* case strongly supports the petitioner's position on both the stay and summary judgment, which militates in favor of a hearing on an expedited basis.

The Respondents' claim that his jurisdictional arguments "fall squarely within the substantive scope of section 1005(e)(2) of the DTA" is contradicted by the express language of limiting subsection (C) of that statute. Further, unlike standard habeas proceedings, the DTA provides no mechanism for factual development and controverting the products of torture, as Abdul Rahim has done through the filing of the summary judgment motion. In the

absence of a forum equivalent to traditional habeas corpus proceedings, this Court should hear the matter forthwith, find jurisdiction to consider the claim, and grant relief. Motion To Life Or Modify Stay at 10-27 (Docket Sheet 35); Reply To Notice Of Military Commissions Act Of 2006 (Docket Sheet 44).

**B.     The Physical And Mental Suffering Of The Petitioner Constitutes Additional Circumstances That Warrant Lifting The Stay.**

When this Court entered its stay on October 24, 2005, the delay of 16 months and counting in reaching an appellate court decision could not have been predicted. At the time the stay was entered, this Court had no idea what the facts were underlying Abdul Rahim's plea to the Court for release based on his factual innocence. Since that time, international investigation and contemporaneous news accounts have corroborated Abdul Rahim's assertions of his factual innocence and the lack of any military jurisdiction over his body. These factors alone are sufficient to warrant the stay being lifted to allow the Court to consider the underlying facts and the military's lack of jurisdiction.

The emergency motion is based on facts that are not disputed in the Respondent's opposition. The petitioner's submissions establish that, although Abdul Rahim had been relatively stable for the first two visits with counsel, the most recent one revealed alarming physical and mental danger that appears to be directly related to the failure to treat Abdul Rahim as the Taliban torture victim that he is. This analysis is supported by expert testimony from both Professor Rejali in corroborating the assertion of brutal torture by the Taliban and

by Doctor Kinzie regarding the special needs of persons who have been subjected to the type of torture inflicted by the enemy regime before 9/11. Emergency Motion For A Hearing Regarding Stay, Exhibits B and E (Docket Sheet 50).

Rather than addressing the terrible suffering Abdul Rahim is enduring and his factual assertions, the Respondents submitted a generic declaration in a different case – dated in December – that "all detainees at Guantánamo Bay receive excellent, comprehensive, and compassionate mental and general medical care." The declarant makes no assertions regarding the treatment of Abdul Rahim, whether he is being treated as a Taliban torture victim, and whether he has suffered the extreme mental distress and self-injury reported in counsel's declarations. In short, based on a generic assurance regarding the treatment of all detainees, the Respondents ask the Court to stand by idly while an innocent man suffers hellish mental agony. The laws and Constitution of the United States, as well as common decency, require more.

This reply would include an update on Abdul Rahim's condition except that, as reflected in the attached Exhibit A, the Respondents have declined to allow a phone call, as provided in Section VIII of the Protective Order for "special circumstances." Part of the reason for the denial is that among the reasons the phone call was requested was to prepare legal submissions regarding his condition. Second Declaration Of Counsel, Exhibit B (Docket Sheet 52). In effect, the Respondents have declined expedited telephonic access to interfere with attorney-client communications necessary to provide information to this Court.

Page 9  REPLY TO RESPONDENT'S OPPOSITION TO EMERGENCY MOTION FOR HEARING REGARDING STAY

The Court should order an expedited hearing in order to fully adjudicate the pending issues in Abdul Rahim's case.

## Conclusion

For the foregoing reasons and those stated in the previous submissions, we respectfully request that the Court set this matter for a hearing at its soonest available time. Counsel has previously traveled from Oregon to participate in a hearing on the filter team motion and will do so again if the Court permits. Between visits to Guantánamo Bay in the third and fourth weeks in February, including a scheduled visit with Abdul Rahim on February 27 and 28, 2007, counsel would be available for a hearing on Friday, February 23, 2007, or after the February 28th visit.

Dated this 16th day of February, 2007.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender


/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender


/s/ Patrick J. Ehlers
Patrick J. Ehlers
Assistant Federal Public Defender

# EXHIBIT A

 "Warden, Andrew \(CIV\)" &lt;Andrew.Warden@usdoj.gov&gt;

02/08/2007 09:18 AM

To "Steve Sady" &lt;Steve_Sady@fd.org&gt;

cc "Steve Wax" &lt;Steve_Wax@fd.org&gt;, "Patrick Ehlers" &lt;Patrick_Ehlers@fd.org&gt;, "Henry, Terry \(CIV\)" &lt;Terry.Henry@usdoj.gov&gt;, "Subar, Judry \(CIV\)"

bcc

Subject RE: abdul rahim abdul razak al ginco; isn 489

History: 🔁 This message has been forwarded.

Steve,

We forwarded your February 2, 2007 letter to Guantanamo Bay and raised your request for telephone access to petitioner Al Ginco. Guantanamo has decided not to permit a telephone call at this time. Providing telephone access by counsel to detainees imposes substantial logistical burdens on Guantanamo operations and, in fact, can in many respects be more burdensome than even a counsel visit due to the detainee moves involved, arrangements for Privilege Team participation due to the inability to use a secure line for such purposes, etc. Furthermore, aside from any logistical concerns, granting your request for a telephone call in these circumstances, where you have stated that the purpose of the call is to confer regarding pending or potential filings, would lead similar to demands by other counsel in other cases where detainee motions are filed or being considered, potentially leading to a burdensome and unacceptable cumulative effect.

Moreover, we understand that attorneys from your office have a confirmed visit to the base scheduled later this month and those attorneys have recently requested to meet with Al Ginco during their trip. DoD is currently trying to facilitate arrangements for meetings with Al Ginco and will provide logistical confirmation to you once the meetings have been arranged.

Best regards,

Andrew

Andrew I. Warden
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530
Tel: 202.616.5084
Fax: 202.616.8470

-----Original Message-----
From: Steve Sady [mailto:Steve_Sady@fd.org]
Sent: Friday, February 02, 2007 6:24 PM
To: Henry, Terry (CIV); Warden, Andrew (CIV)
Cc: Steve Wax; Patrick Ehlers
Subject: abdul rahim abdul razak al ginco; isn 489


Dear Mr. Henry:
    Attached please find a letter confirming our conversation earlier today and a letter to the commander at Guantanamo requesting immediate telephone contact with my client. Please forward the request to

Guantanamo as soon as possible. Thank your for your attention to this matter.

Yours truly,
Stephen Sady

(See attached file: Henry 2.2.07.pdf)

(See attached file: Harris 2.2.07.pdf)