**Steven T. Wax, OSB #85012**
**Federal Public Defender**
steve_wax@fd.org
**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
101 SW Main Street, Suite 1700
Portland, Oregon  97204
Tel:    503-326-2123
Fax:    503-326-5524

**Attorneys for Petitioner**

### UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDULRAHIM ABDUL RAZAK AL GINCO,**<br><br>                                                  **Petitioner,**<br>           v.<br><br>**GEORGE W. BUSH, et al.,**<br><br>                                                  **Respondents.** | **05-CV-1310-RJL**<br><br>**PETITIONER'S STATUS REPORT PURSUANT TO ORDER OF JULY 15, 2008** |

On July 15, 2008, the Court issued an order requiring the parties to report on the status of this habeas corpus matter. Petitioner hereby reports as follows.

**1.    Overview:**

After almost two years of being tortured and imprisoned by the Taliban, the American bombing of Kandahar liberated Abdulrahim Abdul Razak Al Ginco from the Taliban's political prison, leaving the Syrian Kurd, who had falsely been accused of being an American spy, free to go home. As he and four other non-Afghans looked for help from the Red Cross and the United Nations, Mr. Ginco and the others spoke with journalists and asked them to convey to the American military for assistance and offers to provide testimony to the human rights violations he and others suffered. The Americans took him to the Kandahar air base where, at first, he was treated relatively well. Then, based on the erroneous belief that a tape of his false confession as a spy was a terrorist tape, Mr. Ginco received enhanced interrogation, then a trip to Guantánamo Bay, where he has

remained for over six years. He has been suffering from torture-related mental health problems, including post-traumatic stress disorder, that have been exacerbated by his treatment at Guantánamo.

**2.     Motion For Summary Judgment:**

On September 21, 2006, Mr. Ginco filed a motion for partial summary judgment, accompanied by a statement of material facts and exhibits, and a motion to lift the stay. The statement of material facts was supported by the results of investigation, including sworn statements of family members regarding Mr. Ginco's life as a religiously moderate 21-year-old student and his departure from the United Arab Emirates after a family dispute; his sworn testimony regarding his attempt to reach Europe through Afghanistan and conscription by the Taliban; contemporaneous press accounts of Mr. Ginco's seizure by the Taliban and denunciation as an American spy; corroborating statements from fellow detainees in the Taliban political prison; reports from international experts on torture; and physical evidence such as a copy of his passport and a video of his coerced confession as an American spy, which had been broadcast in May 2000. The motion identified four issues upon which summary judgment for the petitioner is appropriate:

1) Because a torture victim and political prisoner of the Taliban for almost two years prior to September 11, 2001, is not an enemy combatant under any statutorily authorized definition of that term, Mr. Ginco is factually innocent of the designation and is being imprisoned in the absence of a decision of a competent tribunal.

2) Because Mr. Ginco was a Taliban torture victim and political prisoner for almost two years prior to the Authorization for the Use of Military Force, the temporal nexus for seizure required by the laws of war and *Hamdan v. Rumsfeld,* 126 S.Ct. 2749, 2795 (2006), forecloses Department of Defense initial jurisdiction;

3) Because the Department of Defense considered and relied on videotapes of Mr. Ginco that are the products of Taliban torture and threats of death, the resulting imprisonment violated Article 15 of the Convention Against Torture, which bars the use of the results of torture in any proceedings and forecloses Department of Defense initial jurisdiction; and

4) Because initial custody resulted from Mr. Ginco approaching United States authorities to volunteer to be a witness to human rights violations, including against American citizens, the Department of Defense lacked jurisdiction to designate him as an enemy combatant, especially in light of statutory and constitutional protections for witnesses.

The summary judgment motion is pending and, under local rules, should require the filing of a responsive pleading in 11 days.

**3.     Discovery Provided By The Petitioner:**

The evidence provided by the petitioner in support of the summary judgment motion included the exhibits filed with the motion (CR 37), the declaration of Jamal Al-Hadrith (CR39), and the expert reports filed in support of an emergency motion following hospitalization of Mr. Ginco (CR 50, 51, 52). In addition to filing the material with this Court and opposing counsel almost two years ago, Mr. Ginco provided the material to the Defense Department's Administrative Review Board on October 5, 2006; to the Court of Appeals on April 11, 2007; and to the Office for the Administrative Review of Enemy Combatant Determinations on September 17, 2007.

**4.     Discovery Provided By The Government:**

Despite repeated requests for government information and a return, as well as the government's acknowledgment that it possesses exculpatory information, the government has refused to provide a return or any other information to justify Mr. Ginco's detention, most recently on July 15, 2008. Under 28 U.S.C. § 2243, the order to show cause should issue forthwith, followed by a return within three days, which can be extended to 20 days for good cause shown.

**5.     Procedural History:**

Since Mr. Ginco filed his petition on June 30, 2005, supplemented on August 2, 2005, the government has been on formal notice that Mr. Ginco is not an enemy combatant because he was a prisoner and victim of the Taliban who approached Americans for help. His pro se petition includes a readily understandable account of his innocence:

> I am and was a victim of Al Qaeda and the Taliban in the past. I have spent two years in their prison that so-called Sareezah Prison in Kandahar, Afghanistan. Then the American forces appeared and apprehended me; from prison they brought me to here, hence the ICRC requested from the American forces to release us. The American forces made promises that they were going to release us three days later. However, they have gone back on their promise and since those three days, here we are approaching the fourth year. How can that be? I was informed that it is my right to object in the American courts. Therefore, I say with all pride that I am not a threat to the U.S.A. or to any of its allies. I was a university student and I am wholly prepared to cooperate with the American government. This is in addition that I was cooperative and I have been for a period of more than three years. Thus, what do the American forces want with me?

Since counsel entered a notice of appearance on April 11, 2006, Mr. Ginco has sought relief without delay before this Court and in the Court of Appeals under the Detainee Treatment Act.

### A. DTA Motion To Expedite:

Shortly after the initial denial of certiorari in *Boumediene*, Mr. Ginco filed a DTA petition along with a motion for expedition and supporting exhibits. On August 23 and 24, 2007, the Circuit Court granted the motion for expedition and set a discovery and briefing schedule. On September 12, 2007, the government announced that a new Combatant Status Review Tribunal would be held based on the evidence provided by Mr. Ginco's counsel and "additional evidence obtained independently." Mr. Ginco's counsel provided material to the Department of Defense regarding Mr. Ginco's innocence and requested that counsel be permitted to participate in the new CSRT as counsel, witness, or observer. The government moved to remand or to hold the Mr. Ginco's DTA case in abeyance and then filed a motion to stay the DTA proceedings. On October 23, 2007, the Circuit Court denied the government's motions on the government's representation that the CSRT was anticipated by "late October."

### B. DTA Emergency Motion:

On October 31, 2007, Mr. Ginco filed a motion for emergency interim relief, requesting a range of equitable remedies based on the government's failure to keep its schedule and the resulting irreparable harm. For the next nine months, the government failed to reach a conclusion, reporting periodically to the Circuit Court with expected times for action, then reporting the action had not occurred but would occur soon. After seven promised times, the new CSRT finally took place on February 14, 2008, with no participation by counsel. At first, the government reported no decision; then after asserting that a decision had been reached that he was an enemy combatant, the government engaged in a series of legal sufficiency reviews, without disclosing their nature, until the claim on July 11, 2008, that the final decision had been reached. The government has moved for a stay of the DTA case based on *Boumediene*. Mr. Ginco filed an opposition and reiterated the request for equitable interim relief, including production of the exculpatory material and maintenance of the DTA matter pending this Court's rulings.

### C. Motion For 30-Day Notice:

On May 2, 2006, Mr. Ginco filed a motion requesting that he receive notice of any prospective transfer due to concerns that, because he is a Syrian Kurd who has been incorrectly denounced both as an American spy and as an enemy combatant, he faced danger of torture and death in Syria. This Court denied the motion in a minute order on May 30, 2006, from which Mr. Ginco filed an interlocutory appeal. The Circuit Court at first dismissed the appeal based on its jurisdictional opinion in *Boumediene*; then, after the Supreme Court granted certiorari, the Circuit Court deferred ruling on a petition for rehearing and ordered further pleadings in 30 days from the final *Boumediene* opinion. Mr. Ginco filed a timely motion to govern requesting that the Court vacate its dismissal and enter an order either granting the 30-day notice of transfer or remanding the matter to this Court.

   D.   *Motion To Lift Stay And Schedule Expedited Hearing On Pending Motion For Summary Judgment:*

On the day the Supreme Court filed *Boumediene*, Mr. Ginco submitted to this Court a motion to lift the stay and to set the summary judgment motion on an expedited schedule. The government opposed, citing the need for the Court to confer with other judges. Mr. Ginco filed a reply contending that the Court should set the case on an emergency basis because 1) the government had full discovery for almost two years and had just assembled and reviewed both the old and new CSRT records; 2) the norm for habeas is for a return to be filed in not more than 20 days; 3)Mr. Ginco had suffered and was suffering irreparable harm while the government delayed; and 4) the Circuit Court's grant of expedited consideration is *res judicata* on the need to accelerated consideration of the case.

## 6.   Evidentiary Hearing:

If the summary judgment motion does not result in relief, Mr. Ginco anticipates that a full evidentiary hearing would be appropriate. Witnesses are available to corroborate Mr. Ginco's account, and, because he speaks English, the Court can obtain his testimony with relative ease. Given the balance of interests that underlie the process due, this case involves the need for maximum protection. This case does not involve the battlefield seizure of a person bearing arms against Americans; on the contrary, this case involves the heightened protections due to a person who approached Americans seeking to be a witness to human rights violations and to receive assistance from the government. The danger of an incorrect determination is extremely high: the government admitted that there was a "substantial likelihood" that the old CSRT would have been different with the new evidence; the new CSRT was plagued with doubts and uncertainties for almost a year; and the CSRT system itself has been shown to be unreliable, as demonstrated by the reports of members of CSRTs as well as by the refusal to even allow counsel to be present.

## 7.   Summary Response To July 15, 2008, Order:

   A.   There are no administrative issues that need to be resolved at this time. Protective orders have been entered in the District and Circuit Courts.

   B.   A motion to lift the stay was filed by Mr. Ginco on July 17, 2008, with a request for expedited briefing on pending motion for summary judgment. The government filed its opposition on July 23, 2008, to which Mr. Ginco replied on July 26, 2008.

   C.   Mr. Ginco, a prisoner and torture victim of the Taliban and Al Qaida for almost two years for being an American spy, was taken into United States custody in January 2002, after the liberation of a Taliban political prison in Kandahar, Afghanistan. He was taken to Guantánamo several months thereafter.

   D.   Counsel has no reason to believe that Mr. Ginco will be transferred or released in the near future.

E. There are no duplicate petitions involving Mr. Ginco.

F. Mr. Ginco has not been charged with war crimes under the Military Commissions Act of 2006.

G. The Motion to Lift Stay and Schedule Expedited Hearing on Pending Motion for Summary Judgment (CR 73) is ripe for decision. The Motion for Partial Summary Judgment (CR 37) and supporting pleadings have been filed since September 25, 2006, and the motion is ripe for the government's responsive pleading. The government's motion to dismiss in light of the DTA (CR 60) is pending.

H. A factual return has not been filed. Following the hearing on July 8, 2008, Mr. Ginco again requested that the government provide him with the records involving the CRST proceeding conducted on February 14 and finalized on July 15, 2008. The government said that such information was not being provided.

I. Discovery will be requested if the summary judgment motion does not result in relief.

J. Mr. Ginco is suffering from severe PTSD caused by two years of imprisonment and torture in the Taliban prison. His condition has been exacerbated by his detention in Guantánamo.

K. Mr. Ginco's case is unique, both procedurally and substantively.

Respectfully submitted this 18th day of July, 2008.

    /s/ Steven T. Wax
    Steven T. Wax
    Federal Public Defender


    /s/ Stephen R. Sady
    Stephen R. Sady
    Chief Deputy Federal Public Defender