**Steven T. Wax, OSB #85012**
**Federal Public Defender**
steve_wax@fd.org
**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
101 SW Main Street, Suite 1700
Portland, Oregon  97204
Tel:   503-326-2123
Fax:   503-326-5524

**Attorneys for Petitioner**

# UNITED STATES DISTRICT COURT

# DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDUL RAHIM ABDUL RAZAK AL GINCO,**<br><br>                          Petitioner,<br>v.<br>**GEORGE W. BUSH, et al.,**<br><br>                          Respondents. | 05-CV-1310-RJL<br><br>**PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS IMPROPER RESPONDENTS** |

Petitioner Abdul Rahim Abdul Razak Al Ginco, through his attorneys, opposes

Respondents' Motion to Dismiss Improper Respondents.  In general, habeas cases must name

**Page 1   PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS IMPROPER RESPONDENTS**

the petitioner's immediate custodian, usually the warden of the prison where the petitioner is confined. Respondents cite an exception to this "immediate custodian" rule for extraterritorial cases, but given the holdings in *Boumediene v. Bush*, 128 S.Ct. 2229 (2008), and *Rasul v. Bush*, 542 U.S. 466 (2004), it is unclear that the exception applies in the above-captioned case. Uncertainty regarding application of this rule and the risk of a potential transfer of Petitioner outside the reach of the Department of Defense create a unique situation that warrants retaining all named Respondents. For reasons set forth below, the Court should deny the Motion and retain all Respondents.

## ARGUMENT

### I. Commanding Officers At The Detention Facility In Guantanamo Are Proper Respondents

The federal habeas statute provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). These provisions form the basis for the "immediate custodian" rule, as they "contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)). In accordance with this rule, and the captions in Supreme Court cases involving Guantánamo prisoners, this Court named the two military officials who were determined to be his immediate custodians

as well as the President and the Secretary of Defense on Mr. Ginco's *pro se* submission: The Government acknowledges that "those within the chain of command between petitioners' immediate custodian at Guantanamo Bay, Cuba and the Secretary of Defense either have 'custody' or 'legal control' over petitioners." Gov't Mot. at 6.

The Government argues that the Secretary of Defense is the sole "legal custodian," but cites no dispositive caselaw to that effect. Gov't Mot. at 5–6. In attempting to make this point, the Government first cites *al-Marri v. Rumsfeld*, but that case held, contrary to the Government's position, that "for an inmate of a brig, jail, or prison the 'custodian' is the person in charge of that institution," which "[i]n the federal system, . . . means the warden (or Commander) rather than . . . the Secretary of Defense." 360 F.3d 707, 708–09 (7th Cir. 2004). The Government also cites *Padilla*, where the Court rejected the petitioner's "legal reality of control" argument (which appears strikingly similar to the Government's argument here that only Mr. Gates has "legal control"). *Padilla*, 542 U.S. at 434–35. The Court in *Padilla* concluded that Secretary Rumsfeld, although he exercised the "legal reality of control" was not a proper Respondent. Id. at 439. Thus, under *Padilla*, Petitioner must, at a minimum, name his immediate physical custodians or risk dismissal of his Petition.

The Government also cites to footnote 9 in *Padilla*, which states only that there is an "exception to the immediate custodian rule in the military context where an American citizen is detained outside the territorial jurisdiction of any district court." *Id*. at 436 n.9 (quoting *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 498 (1973)). That exception

seems to be inapplicable because Guantánamo Bay is not outside the territorial jurisdiction of this Court. *See Boumediene v. Bush*, 128 S.Ct. 2229, 2261 (2008) ("In every practical sense Guantanamo is not abroad; it is within the constant jurisdiction of the United States."); *Rasul v. Bush*, 542 U.S. 466, 480 (2004) (same).[1] Given Justice Kennedy's controlling concurrence in *Padilla*, there may be an additional exception to the "immediate custodian" rule where a petitioner seeks to file a petition against someone other than the immediate custodian and the Government waives objection to such a filing. *Padilla*, 542 U.S. at 451–52. Such a situation does not exist here.[2]

---

[1] Where the exception outlined in *Padilla* does apply, it is unclear who should be named as respondents in lieu of the immediate custodian. Prior cases suggest that where a petitioner and his immediate custodian are outside the jurisdiction of any district court, "the petitioner may name as respondents any of his custodians (not just the immediate custodians) and may file the claim in the court that has jurisdiction over those respondents." *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 44 (D.D.C. 2004). If the *Padilla* exception were to apply here, Petitioner could indeed name any of his custodians. Therefore, Petitioner has named the President and the Secretary of Defense as respondents given the ambiguity of the law.

[2] Petitioner's objection to the dismissal of these Respondents rests heavily on the ambiguity of the law and of the Government's purpose in filing this motion. Petitioner is concerned that the motion would have substantive effects not properly considered in the Government's motion. The Petition in this case contains many claims for relief other than habeas, including claims for declaratory relief. Whether those claims are cognizable, and whether any or all of the existing Respondents are necessary for relief under those claims, are issues the Government has not addressed. If the Government waives any future jurisdictional challenge to Petitioner's habeas petition and other claims for relief, Petitioner would consent to the dismissal of the Commanders of Joint Task Force-GTMO and of the Joint Detention Operations Group as named Respondents. To be clear, if Petitioner were to consent to dismissal of those Respondents following such a waiver and the Government were to raise a jurisdictional challenge to requested relief at a later point in these proceedings on the basis that the proper Respondent was not named, Petitioner should be permitted to amend his petition to include that official.

Page 4  PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS IMPROPER RESPONDENTS

The Government's final argument, that the "other respondents named within the chain of command are superfluous and should be dismissed," Gov't Mot. at 6, is similarly made without any authority. Instead, the Government is reduced to making a strained analogy to the Detainee Treatment Act ("DTA"). *See id.* (citing Pub. L. 109-163, Div. A, Title XIV, § 1405(e)(4), 119 Stat. 3136 (Jan. 6, 2006)). As the Supreme Court found in *Boumediene*, the review of CSRT determinations under the DTA is a very different procedure from habeas corpus, and it would therefore make little sense to follow "Congress's judgment in the DTA context," Gov't Mot. at 6, especially when other federal statutes – sections 2242 and 2243 – already provide that the proper respondents are those having custody over the person detained.

## II.     The President Is A Proper Respondent

Even if the immediate custodian rule applies in this case,[3] the unique situation of Petitioner and other Guantánamo detainees suggests that the President should remain a named Respondent. Mr. Al Ginco maintains that he is innocent of the enemy combatant designation. The habeas remedy is equitable in nature. 28 U.S.C. § 2243 (the Court should "dispose of the matter as law and justice require"); *Schlup v. Delo*, 513 U.S. 298, 319 (1995) (habeas "is, at its core, an equitable remedy:). This Court should retain all Respondents including the President, to assure the full range of equitable remedies are available.

---

[3] If the habeas cases of Guantanamo detainees are governed by an exception to the immediate custodian rule, nothing would prohibit properly naming the President as a Respondent in this case. *See supra*, note 1.

Page 5   PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS IMPROPER RESPONDENTS

Further, if the President is dismissed, then the Government can evade this Court's authority simply by transferring the detainee from the custody of the Department of Defense (DoD) to the Central Intelligence Agency (CIA), to the Department of Justice (DoJ), or to other agencies unknown to Petitioner. A number of detainees were previously transferred from CIA custody to DoD and are currently detained at Guantánamo. At least one terrorism suspect was transferred from the DoJ to DoD when the Government found it convenient to do so. *See Al-Marri v. Pucciarelli*, ___ F.3d ___, 2008 W.L. 2736787, at *3–4 (4th Cir. July 15, 2008) (en banc) (noting Government's dismissal of indictment during criminal proceedings against defendant and order signed by President transferring defendant to military custody). And at least one terrorism suspect was transferred from DoD to DoJ, also at the Government's convenience, and to the great consternation of one federal Court of Appeals. *See Padilla v. Hanft*, 432 F.3d 582 (4th Cir. 2005) (denying Government's motion to transfer military detainee to civilian authorities for trial, after Court had previously given Government authority to hold the detainee in military custody), *rev'd*, 546 U.S. 1084 (2006). Additionally, the Government takes the position that it has the unfettered discretion to transfer detainees from Defense Department control. *See* Government's Brief Regarding Procedural Framework Issues at pp. 43–46. Accordingly, inter-agency transfer in these cases is a real concern.

This is not to say that Petitioner has named the President as his future custodian; the President is very much the current custodian and therefore is properly named as a

Respondent. Indeed, the Government claims that the Executive's authority to detain Petitioner in this case arises from two sources: the President's Article II powers, and the President's authority to "use all necessary and appropriate force" under the AUMF, 115 Stat. 224 (2001). Prior to filing this Motion to Dismiss, the Government made no mention of the Secretary of Defense as the exclusive source of custodial authority over Petitioner.

In justifying its attempt to dismiss the President, the Government relies chiefly on an 1867 case for the proposition that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." Gov't Mot. at 2 (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498–99 (1867)). The Court of Appeals for the District of Columbia Circuit, however, has twice interpreted *Mississippi v. Johnson* much more narrowly than the reading suggested in the Government's motion. In *National Treasury Employees Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974), the Court of Appeals observed that *Mississippi v. Johnson* actually turned on a finding that the case presented a nonjusticiable political question. The Court in *National Treasury* held that *Mississippi v. Johnson* did not bar a Court from issuing a writ of mandamus to the President to effectuate a pay raise owed to certain federal employees (although the Court did not formally issue the writ). And in *Nixon v. Sirica*, 487 F.2d 700, 712 n.53 (D.C. Cir. 1973), the Court read *Mississippi v. Johnson* to mean merely that the President could not be enjoined to "coerce a discretionary, as opposed to ministerial, act of the Executive."

The second case cited by the Government, *Franklin v. Massachusetts*, 505 U.S. 788 (1992), merely questioned the judiciary's authority to issue an injunction against the President, without deciding the question. *See id*. at 802–03. More recent authority makes clear that the President "is subject to judicial process in appropriate circumstances." *Clinton v. Jones*, 520 U.S. 681, 703 (1997). As the Supreme Court explained in *Clinton v. Jones*,

> Although Thomas Jefferson apparently thought otherwise, Chief Justice Marshall, when presiding in the treason trial of Aaron Burr, ruled that a subpoena duces tecum could be directed to the President. United States v. Burr, 25 F. Cas. 30 (No. 14,692d) (C.C.Va. 1807). We unequivocally and emphatically endorsed Marshall's position when we held that President Nixon was obligated to comply with a subpoena commanding him to produce certain tape recordings of his conversations with his aides.

520 U.S. at 703–04 (footnote omitted); *see also United States v. Nixon*, 418 U.S. 683 (1974). The Supreme Court also observed that "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Id*. at 704.[4]

It may well be that this Court has no power to enforce certain orders directed to the President. But the order itself has significance. In *Ex parte Merryman*, 17 F. Cas. 144 (C.C. Md. 1861), Chief Justice Taney, sitting as Circuit Justice in the District of Maryland, issued

---

[4] President from the caption of a habeas petition pending on appeal. The *al-Marri* decision is not binding on this Court, of course, and Petitioner contends it misreads *Franklin* and neglects the other authorities cited in the text. In *al-Marri*, moreover, the petitioner named the President and the Secretary of Defense in order to acquire jurisdiction in a district court outside his place of incarceration, so the Court needed to resolve the identity of the proper respondents in order to determine the cognizability of the petition in a particular district. In this case, the Government concedes that this Court is the proper forum for this petition.

**Page 8   PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS IMPROPER RESPONDENTS**

a writ of habeas corpus to consider the petition of a Baltimore County farmer held by the military at Ft. McHenry, in Baltimore City. The officer in charge of the military prison refused to honor the writ on the ground that President Lincoln had given him the authority to suspend habeas corpus. Chief Justice Taney held that the president had no authority to suspend habeas. He directed the clerk "to transmit a copy [of the opinion], under seal, to the president of the United States. It will then remain for that high officer, in fulfillment of his constitutional obligation to 'take care that the laws be faithfully executed,' to determine what measures he will take to cause the civil process of the United States to be respected and enforced." *Id*. at 153. Petitioner in this case can ask no more, but he should not be required to ask for less.

**Conclusion**

For the reasons stated, without further stipulation by the Government, the Court should deny the motion to dismiss Respondents.

Respectfully submitted this 28th day of August, 2008.

                                        /s/ Steven T. Wax
                                        Steven T. Wax
                                        Federal Public Defender

                                        /s/ Stephen R. Sady
                                        Stephen R. Sady
                                        Chief Deputy Federal Public Defender