# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BOUMEDIENE, )<br>　　　　Petitioner, )<br>　　v. )<br>GEORGE W. BUSH, )<br>　　President of the United States, )<br>　　et al., )<br>　　　　Respondents )<br>_____) | Civil Action No. 04-cv-1166 (RJL) |
| )<br>SLITI, )<br>　　　　Petitioner, )<br>　　v. )<br>GEORGE W. BUSH, )<br>　　President of the United States, )<br>　　et al., )<br>　　　　Respondents )<br>_____) | Civil Action No. 05-cv-0429 (RJL) |
| )<br>KABIR, )<br>　　　　Petitioner, )<br>　　v. )<br>GEORGE W. BUSH, )<br>　　President of the United States, )<br>　　et al., )<br>　　　　Respondents )<br>_____) | Civil Action No. 05-cv-0431 (RJL) |
| )<br>MAMMAR, )<br>　　　　Petitioner, )<br>　　v. )<br>GEORGE W. BUSH, )<br>　　President of the United States, )<br>　　et al., )<br>　　　　Respondents )<br>_____) | Civil Action No. 05-cv-0573 (RJL) |
| )<br>AL KAHAIY, 　　　　　　　　　)<br>　　　　Petitioner, )<br>　　v. )<br>GEORGE W. BUSH, )<br>　　President of the United States, )<br>　　et al., ) | Civil Action No. 05-cv-1239 (RJL) |

| | |
|---|---|
| Respondents ) | |
| _____ ) | |
| ) | |
| AL GINCO, ) | |
|   Petitioner, ) | |
|   v. ) | Civil Action No. 05-cv-1310 (RJL) |
| GEORGE W. BUSH, ) | |
|   President of the United States, ) | |
|   et al., ) | |
|   Respondents ) | |
| _____ ) | |
| ) | |
| AL BIHANI, ) | |
|   Petitioner, ) | |
|   v. ) | Civil Action No. 05-cv-1312 (RJL) |
| GEORGE W. BUSH, ) | |
|   President of the United States, ) | |
|   et al., ) | |
|   Respondents ) | |
| _____ ) | |
| ) | |
| GHAZY, ) | |
|   Petitioner, ) | |
|   v. ) | Civil Action No. 05-cv-2223 (RJL) |
| GEORGE W. BUSH, ) | |
|   President of the United States, ) | |
|   et al., ) | |
|   Respondents ) | |
| _____ ) | |
| ) | |
| RUMI, ) | |
|   Petitioner, ) | |
|   v. ) | Civil Action No. 06-cv-0619 (RJL) |
| GEORGE W. BUSH, ) | |
|   President of the United States, ) | |
|   et al., ) | |
|   Respondents ) | |
| _____ ) | |
| ) | |
| OBAYDULLAH, ) | |
|   Petitioner, ) | |
|   v. ) | Civil Action No. 08-cv-1173 (RJL) |
| GEORGE W. BUSH, ) | |
|   President of the United States, ) | |
|   et al., ) | |
|   Respondents ) | |

_____)

## GOVERNMENT'S SUPPLEMENTAL BRIEF
## ADDRESSING *BISMULLAH V. GATES*

This Court should not order discovery or disclosure based upon the D.C. Circuit's decision in *Bismullah v. Gates*, 501 F.3d 178, 192 (D.C. Cir. 2007) (*Bismullah I*).  The decision has no relevance or applicability to habeas proceedings and the Government is currently considering whether to seek review of the panel decision by the full *en banc* court.

**1.** In *Bismullah*, the D.C. Circuit interpreted the Detainee Treatment Act, which grants exclusive review in the D.C. Circuit of "final decisions" made by Combatant Status Review Tribunals (CSRTs).  *See* Detainee Treatment Act, Pub. L. No. 109-148, tit. X, § 1005(e)(2), 119 Stat. 2680, 2739 (DTA).   In that law, Congress authorized the D.C. Circuit to review whether those decisions are "consistent with the standards and procedures specified by the Secretary of Defense" including the "requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence."  DTA § 1005(e)(2).  One of the procedures specified for CSRT hearings requires a CSRT Recorder to review a pool of "reasonably available information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant," called the "Government Information."  CSRT Procedures, enc. 1, § (E)(3).  In reviewing this information, the CSRT Recorder must identify any "evidence to suggest that the detainee should not be designated as an enemy combatant." *Id.*, enc. 2, § (B)(1).

A court of appeals panel held that the "record on review" in cases brought under the DTA "consists of all the information a Tribunal is authorized to obtain and consider" pursuant to the

- 3 -

CSRT procedures (*i.e.*, the "Government Information"). *Bismullah I*, 510 F.3d at 181. The panel reasoned that this body of information was needed to perform two judicial review tasks specifically required by the DTA. First, the panel stated that production of Government Information was necessary to ensure that the Recorder did not withhold from the CSRT any evidence favorable to the detainee. *Id*. at 185-86. The panel explained that the DTA requires the Court to determine whether the CSRT decision was "'consistent with the standards and procedures specified by the Secretary of Defense,'" and some of those procedures "relate to steps the Recorder and others must take before the Tribunal holds a hearing." *Id*. at 185 (quoting DTA § 1005(e)(2)). The panel asserted that "[t]here is simply no * * * way for the counsel to present an argument that the Recorder withheld exculpatory evidence from the Tribunal in violation of the specified procedures" unless the "record on review" includes everything examined by the Recorder. *Id*. Second, the panel stated that it "cannot, as the DTA charges us, consider whether a preponderance of the evidence supports the Tribunal's status determination without seeing all the evidence, any more than one can tell whether a fraction is more or less then one half by looking only at the numerator and not at the denominator." *Id*.

The court denied the Government's petition for rehearing *en banc* by an evenly divided vote, but the panel decision garnered the support of less than a majority of the *en banc* court: four judges wrote or joined opinions supporting the decision; *five* judges wrote or joined opinions that sharply questioned its reasoning; and one judge, Judge Garland, expressly reserved judgment on the merits, but voted against *en banc* review solely to avoid delaying the Supreme Court's resolution of *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). *See Bismullah v. Gates*, 514 F.3d 1291, 1298-99, 1306 (D.C. Cir. 2008) (*Bismullah III*). The Supreme Court then vacated the

decision for reconsideration in light of *Boumediene*. *Gates v. Bismullah*, 128 S. Ct. 2960 (2008). The panel reinstated its prior decision in a one-sentence order, *Bismullah v. Gates*, Order (filed Aug. 22, 2008), and the Government is currently considering whether to petition the *en banc* court for review.

**2.**   As the Government explained in its procedural framework briefing, pp. 25-27, there are several reasons why the *Bismullah* decision has no applicability or relevance to these habeas proceedings.

First, the "Government Information" identified by the *Bismullah* panel is a creature of CSRT procedures and DTA statutory review, neither of which is relevant to this habeas proceeding. *See* CSRT Procedures, Enc. 1, § (E)(3) (defining "Government Information"); *id.*, Enc. 2 (discussing role of the CSRT Recorder in reviewing Government Information). More specifically, this Court will not be assessing the "steps the Recorder and others must take before the Tribunal holds a hearing." *Bismullah I*, 501 F.3d at 185. Nor will this Court evaluate whether "a preponderance of the evidence [available to the CSRT] supports the Tribunal's status determination." *Id.* Although the CSRT decisions may be submitted as part of the Government's factual return, this Court is not reviewing the validity of those decisions; instead, it is answering whether, based on all of the evidence before it, the detention at issue is lawful.

Indeed, there is no extant body of Government Information to be disclosed. In other words, there is no historical body of material actually looked at by CSRT Recorders when the CSRTs were originally conducted that is available to be disclosed today. *See Bismullah v, Gates*, 503 F.3d 137, 141 (D.C. Cir. 2007) (*Bismullah II*). Because the "Government Information" for CSRTs conducted prior to the *Bismullah* ruling was not maintained, it therefore does not exist

and cannot be discovered.  As the D.C. Circuit acknowledged, the Government was justified in

not maintaining that pool of information because, when the CSRTs at issue were conducted, no

statute or regulation required that the information be maintained; instead, the CSRT procedures

called for retaining the smaller administrative record that was selected from that larger pool and

considered by the CSRT.  *See* Order Establishing CSRT, § (g)(3); *Bismullah II*, 503 F.3d at 141

("We note in the Government's defense that CSRTs made hundreds of status determinations,

including those under review in the present cases, before the DTA was enacted in December

2005 and therefore without knowing what the Congress would later specify concerning the scope

and nature of judicial review.").  Further, there is no requirement that a CSRT be held in the first

place, much less a requirement that the Government hold new CSRT hearings for the simple

purpose of recompiling the Government Information.  Such a course would also, obviously,

significantly delay these proceedings and thus make this Court's aggressive schedule impossible.

      Second, habeas practice, even outside the novel context of wartime status determinations,

includes no mandatory disclosure obligation, much less an obligation to produce all of the

material defined as "Government Information" in the CSRT procedures.  Instead, under the

habeas statute, the Government is charged only with filing a "return certifying the true cause of

the detention."  *See* 28 U.S.C. § 2243.  Discovery is available at most at the discretion of the

district court, Habeas Rule 6, and, in this context, any discovery must be conducted in a "prudent

and incremental" manner.  *Hamdi v. Rumsfeld*, 542 U.S. 534 (2004) (plurality).  Importantly, the

"Government Information" at issue in *Bismullah* includes even more than the materials subject to

disclosure under *Brady*, which this Court already has stated is inapplicable in this context. *See*

Case Management Order (Aug. 27, 2008); *see also Bismullah II*, 503 F. at 140 (whether or not

- 6 -

ruling "impose[s] . . . a greater obligation to 'turn over' exculpatory evidence . . . than [*Brady*]"
is "irrelevant"). Moreover, such a disclosure obligation would closely resemble the open-ended
discovery that was ordered by the district court and reversed by the Supreme Court in *Hamdi*.

Third, imposition of *Bismullah* discovery and disclosure obligations would be
extraordinarily burdensome on the Government. As the *Bismullah* panel itself recognized, the
only feasible way of compiling the Government Information is to convene new CSRT hearings
for each detainee and to conduct broad searches of agency records government-wide, subject
only to a limitation, defined with less-than-perfect clarity, that the information searched for be
"reasonably available." *Bismullah II*, 503 F.3d at 141. As various senior Government officials
explained, in supporting our prior petition for *en banc* review, it is difficult to overstate the
burden such a requirement would impose on our military and intelligence agencies during the
middle of an ongoing armed conflict. *See Bismullah III*, 514 F.3d at 1301 (Henderson, J.,
dissenting) ("the five officials-charged with safeguarding our country while we are now at war-
have detailed the grave national security concerns the *Bismullah I* holding presents"). Even
worse, these onerous search burdens would be imposed above-and-beyond the ongoing burdens
imposed by the ongoing habeas litigation, in which the Department of Justice, the Department of
Defense, and the Central Intelligence Agency have already dedicated around 150 individuals to
these cases exclusively. *See In Re Guantanamo Bay Litigation*, Motion for Partial and
Temporary Relief, No. 08-442, Ex. B (Dell'Orto Decl. ¶ 3 & n.1), Ex. C (Katsas Decl. ¶¶ 5-7),
& Ex. D (Hayden Decl. ¶ 6) (filed Aug. 29, 2008). Such a course inevitably would delay *these*
proceedings, in contravention of the Supreme Court's instruction and this Court's determination
that they be conducted "prompt[ly]." *Boumediene*, 128 S. Ct. at 2275.

Fourth, the D.C. Circuit created an expansive appellate record primarily to address its concern that a CSRT determination is not "the product of an open and adversarial process . . . [but] is the product of a necessarily closed and accusatorial process," in which the detainee lacked a meaningful opportunity to submit his own evidence. *Bismullah III*, 514 F.3d at 1296 (Ginsburg, C. J., concurring in denial of rehearing *en banc*); *see also Boumediene*, 128 S. Ct. at 2270. More specifically, the D.C. Circuit felt a special need to review the Recorder's performance in identifying exculpatory material – going well-beyond the review of *Brady* compliance that would be available in a domestic criminal prosecution – because it believed there was no other viable way for exculpatory evidence to get into the record. *See Bismullah I*, 501 F.3d at 185. Here, on the other hand, the record before a habeas court will be the result of an adversarial process where each petitioner has an opportunity to submit his own evidence, with the assistance of counsel. Thus, while the Government's disclosure obligation is not as broad in habeas as it would have potentially been under the DTA as interpreted in *Bismullah*, the nature of the habeas process will allow each petitioner to develop his own record, a feature that alleviates the specific concerns about CSRT procedures, and DTA review, expressed in *Boumediene* and *Bismullah*.

Finally, the Government maintains that *Bismullah* was wrongly decided and is currently considering whether to seek rehearing *en banc* of the panel order reinstating the decision after its vacatur by the Supreme Court. As we have explained, even before the Supreme Court vacated the original *Bismullah* ruling, and even when habeas review was wholly unavailable in this Court, only a minority of the *en banc* court supported the panel ruling in response to the Government's first rehearing petition. *Bismullah III*, 514 F.3d at 1298-99, 1306. Accordingly,

this Court should not take any action based on that decision until its validity has been finally

resolved.

**CONCLUSION**

For the foregoing reasons and the reasons provided in the Government's opening and

response briefs, the court of appeals decision in *Bismullah* has no relevance to the instant

proceedings.

Dated: September 3, 2008                    Respectfully submitted,

                                             GREGORY G. KATSAS
                                             Assistant Attorney General

                                             JOHN C. O'QUINN
                                             Deputy Assistant Attorney General


                                              /s/ August E. Flentje
                                             _____

                                             JOSEPH H. HUNT (D.C. Bar No. 431134)
                                             VINCENT M. GARVEY (D.C. Bar No. 127191)
                                             JUDRY L. SUBAR (D.C. Bar No. 347518)
                                             TERRY M. HENRY
                                             AUGUST E. FLENTJE
                                             Attorneys
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Ave., N.W.
                                             Washington, DC  20530
                                             Tel:  (202) 514-1278
                                             Fax:  (202) 514-7964
                                             Attorneys for Respondents